## IN THE UNITED STATES DISTRICT COURT  FOR
## THE MIDDLE DISTRICT OF PENNSYLVANIA

TABU N. McCLURE                                                    Civil action #

------------------          PLAINTIFF

    V

*14- 2249*

COMMISSIONER JEFFREY T. HASTE,
BOARD OF DAUPHIN COUNTY PRISON,
(UNKNOWN # OF JOHN DOE'S),
WARDEN DOMINIC DEROSE,
DEPUTY WARDEN NICHOLS,        -------          DEFENDANTS
DEPUTY WARDEN D.W.CARROLL,
MAJOR STEWART,
CAPT. NIDIEGH,
LT.CARNAZZO,
LT. HOSTETTER,
SGT.R ADAMS

**FILED**
**SCRANTON**
NOV 2 5 2014

PER _____
DEPUTY CLERK

### JURY TRIAL DEMANDED

### VERIFIED COMPLAINT FOR DAMAGES

### I ) INTRODUCTION

1.)  This is a civil rights action filed by plaintiff Tabu N. McClure for damages under 42
U.S.C.1983, alleging cruel and unusual punishment in violation of the Eighth
Amendment,also violations of plaintiffs Fourteenth Amendment Due Process rights and
Equal Protection Clause to the U.S. Constitution, and plaintiffs state rights , and official
oppression by authorities in violation of 18 Pa . C.S. 5301, and Pa. Code 37 sec. 95.229
regarding bedding. State claims are jurisdictionally vested in this court by 28 U.S.C.
1367 (c) .

### II ) JURISDICTION

2.) Jurisdiction of this Court is invoked pursuant to 28 U.S.C.1331 in that this is a civil action
arising under the Constitution of The United States.

3.) Jurisdiction of the Court is invoked pursuant to 28 U.S.C. 1343 (a) (3) in that this action seeks to redress the deprivation, under color of state law, of rights secured by Acts of Congress providing for equal rights of persons within the jurisdiction of the United States.

4.) This Court has supplemental jurisdiction over plaintiff's state law claims under 28 U.S.C. 1367.

### III ) PARTIES

5.) The Plaintiff, Tabu N. McClure, was incarcerated at Dauphin County Prison (hereinafter D.C.P.) as a pretrial detainee, and a parole violator at all times relevant herein.

### IV ) DEFENDANTS

6.) Defendant Jeffrey T. Haste is a Commissioner of D.C.P., and is the chairman of the prison board at all times relevant herein.

7.) UNKNOWN # OF JOHN DOE'S OF D.C.P. PRISON BOARD.

8.) Defendant Dominic Derose, who was Warden of D.C.P. at all times relevant herein.

9.) Defendant Nichols, who was Deputy Warden of Treatment at D.C.P. at all times relevant.

10.) Defendant D. W. Carroll, who was Deputy Warden of Security at D. C. P. at all times relevant herein.

11.) Defendant Stewart who was a Major at D. C. P. at all times relevant herein.

12.) Defendant Carnazzo, who was a Lt. at D. C. P. at all times relevant herein.

13.) Defendant Hostetter, who was a Lt. at D. C. P. at all times relevant herein.

14.) Defendant R Adams, who was a Sgt. at D. C. P. at all times relevant herein.

15.) Defendant NiDiegh, who was a Capt. at D. C. P. at all times relevant herein.

16.) Each above named defendant is sued in his official and unofficial capacity at all times herein relevant. At all times mentioned in this complaint each defendant acted under color of state law.

### V) FACTS

17.) On Feb. 8, 2013, while incarcerated at D. C. P. as a pre- trial detainee, at about 11: 30 p.m., I received a misconduct for refusing to turn on my cell light during a shakedown.

18.) I was sprayed with mace, wrestled to the ground and taken to segregation (P 3-2), placed in a strip cell with no clothing or sheets, nor blanket, and no toilet paper.

19.) It was the middle of winter and the cell was very cold, so after about two hours still under these conditions I ripped the stuffing from inside of my mattress and crawled inside of it like a sleeping bag to stay warm.

20.) During this time I repeatedly asked the C. O. (correctional officer) for toilet paper, sheets and a blanket, but was denied.

21.) I was written up for destroying county property, my mattress was taken from me and a memo was issued by Lt. Hostetter stating I was not to be given a mattress between the hours of 8:00 a.m. – 9:00 p.m.

22.) Upon information and belief Lt. Hostetter issued this memo at the behest of Deputy Warden Carroll's directives.

23.) This occurred on the morning of Feb. 9, 2013 at about 2:00 a.m.

24.) Lt. Hostetter instructed that I be given the same damaged mattress to use.

25.) A substantial amount of the internal insulation had been removed form the mattress rendering it defective and useless.

26.) For the next several months until about Sept. 9, 2013 I was forced to utilize this defective shell of a mattress, while in the hole or segregation, exacerbating the above said.

27.) From Feb. 10th thru the 16th. While in segregation, I had to go to the shower and recreation while shackled and handcuffed and was only given 30 minutes for showering and recreation altogether.

28.) Upon information and belief it is the policy, custom, or practice at D. C. P. to use restraints on all inmates during shower and recreation while housed in segregation (P – 3), and to only give 30 minutes of recreation for five days a week.

29.) I already had a pre-existing back problem from lifting weights and after a couple of weeks of being deprived of a mattress to sit or lie down on , I began to experience a substantial amount of pain in my lower back , and occasional tingling and numbness sensation in my legs.

30.) As a result I signed up for medical on several occasions beginning on or about March 20th 2013, each time I was only given Motrin for five or seven days .

31.) I also experienced stiffness in my back, reduced mobility, and a loss of restful sleep. I was also previously diagnosed with situational depression and the circumstances of the situation aggravated my mental and emotional state causing duress.

32.) On Feb. 26th 2013 , I was called up front around 8:30 a.m. to see a public defender, while up front I was handcuffed behind my back by Sgt.R Adam's  and placed in a holding pen for over two hours .

33.) At all times I was in the holding pen by  myself , so the use of restraints by Sgt. R Adam's was unnecessary and could not be justified penologically.

34.)   During this time I had to use the bathroom but was unable to because of the handcuffs. My shoulder also began to ache from being in that position for a prolonged period.

35.) I asked Sgt.R Adam's how was I going to use the bathroom with cuff's behind my back, he    stated "you figure it out".

36.) I filed a grievance concerning Sgt.R Adam's actions to Warden DeRose on Feb. 28th 2013 making him aware of the above said, of which I received a response back from Capt. Nidiegh addressing the issue  dated March 18,2013. He denied these events ever took place and found my grievance to be without merit.( See Exhibit A )

37.)  I then appealed to the Prison Board Chairman (Jeffrey T. Haste) on March 18,2013, he also denied these events took place and denied my appeal on March 26, 2013 .(See Ex. A).

38.) I then appealed his decision to the Full Prison Board on April 5, 2013, of which I received a response back dated June 26, 2013. Mr. Lavery, Jr., esq. responded back on their behalf, in his response he acknowledged and found my initial grievance to be valid and verified the events regarding Sgt. Adam's wanton, callous, and malicious use of restraints violating D.C. P. policy.

39.) However, he went on to try and justify Sgt. Adam's actions and denied my grievance appeal on behalf of the Full Prison Board, even in light of gross violations of D. C. P. policy and my civil rights, as Major Stewart issued a directive on Sept. 14, 2012, some 5 to 6 months before this incident stating, " the policy of placing disciplinary lock-in inmates in mechanical restraints Whenever off of their housing unit is still to be utilized. However, when an inmate in restraints is placed in a cell or holding cage, those restraints are to be removed until such time as that inmate is moved from one area to another."

40.) Upon information and belief, it is the custom or practice at D.C.P. for correctional officers (C. O 's.) to abuse the use of mechanical restraints.

41.) I then appealed to the County Solicitor, who denied my appeal and stated I was justifiably restrained even while alone in a holding cell," for over two hours.

42.) Regarding the continued and prolonged mattress deprivation that I was subjected to for over several months from Feb.- Sept. 2013, I became aware of other inmates at D.C.P. who were accused if the exact same thing as I , destroying or damaging county property (mattress), but who received totally different treatment as I. (See attached affidavits , Exhibit  C.)

43.) One Andthony Ray Spears was written up on two separate occasions, once on 3/20/13 and again on 3/27/13 for destroying or damaging county property , was placed on a mattress deprivation between 8:00 a.m. – 8:00 p.m. which only lasted until 4/23/13, a total of some 34 days, and also assessed a 42.00 dollar assessment as I for damages.(See Ex. C)

44.) The other person, Jayson Emerson who on 5/29/13 was accused of damaging or destroying county property (mattress), was given a 30 day disciplinary sanction and a 42.00 dollar assessment for damage, but was not deprived nor placed on mattress restrictions. (See Ex. C)

45.) On 3/10/13 thru 3/18/13 I was again placed in segregation (P- 3) and was forced to shower with cuffs and shackles on. I endured pain at this time as shackles and cuffs cut and bit into my skin. I was only allowed 30 minutes for recreation or 2.5 hours a week outside of cell from a total of 158 hours a week. During this time I could not effectively utilize me recreation to exercise or move around, as at all times I was shackled and handcuffed.

46.) All the while I was still being deprived of a mattress and only had a concrete slab to either sit or lie on.

47.) Again on 4/19/13 thru 5/2/13 I was placed in segregation (P-3) under the same conditions as described above.

48.) On numerous occasions I spoke to Lt. Hostetter about the prolonged mattress deprivation, when the behavior or actions that led to such had long since ceased and passed, why was I still being punished and treated as such?

49.) On 6/14 /13 at about 4:00 a.m. I spoke to him (Lt. Hostetter) while he was making his rounds, he told me to take it up with the Deputy, of which I told him I had.

50.) As on 5/21/13 I saw and spoke to Deputy Carroll about such while up front in a holding cage, he stated he didn't have time to deal with it.

51.) Again on 7/10 /13 I saw and spoke to Lt. Hostetter about my mattress situation while he was bringing an inmate to segregation (P-3) as I was again in seg under the same conditions as described above, he again stated to take it up with the Deputy as he was not dealing with it.

52.) On or about Feb.22nd,2013 I submitted a grievance to Warden Derose, I received a response from Lt. Carnazzo stating that the conditions cited in my complaint have been authorized by D. W. Carroll, and found my complaint without merit.

53.) I then appealed to Jeffrey T. Haste (Prison Board Chairman), who found nothing wrong with the treatment or conditions I was subjected to, and failed to remedy the situation,and upheld the wardens response.

54.) I then appealed to the Full Prison Board about being subjected to mattress deprivation and making them aware of the harm it was causing me. I received a response from a Frank J. Lavery, esq. on behalf of The Full Prison Board denying my grievance and approving of the treatment I was subjected to for over several months.

55.) Further, I appealed to the Dauphin County Solicitor seeking relief, who also approved of , and denied my appeal.( See Exhibit B)

## VI) EXHAUSTION OF ADMINISTRATIVE REMEDIES

56.) Plaintiff McClure has exhausted all administrative remedies available to him to try and remedy the problem complained of . (See attached exhibits A&B)

## VII) LEGAL CLAIMS

57.) Plaintiff re-allege and incorporates by reference paragraphs 1 thru 56.

58.) The actions of defendant R. Adams , by his wanton, callous, malicious, sadistic, and unnecessary use of restraints against plaintiff McClure, even contrary to official D .C. P. policy, causing plaintiff to endure an unnecessary wanton infliction of pain as delineated in paragraphs 1 thru 56, without any penological justification of such constitutes deliberate indifference, and punishment and subjected plaintiff to an atypical and significant hardship. All in violation of plaintiff's Eighth Amendment Cruel & Unusual Punishment Clause , and/or 14th Amendment Due Process Clause.

59.) The actions, failure, or ommittance to act by all defendants herein , to the unnecessary, wanton , callous , malicious , and sadistic use of restraints by employees at D . C. P. constitutes a deliberate indifference, punishment and subjected plaintiff to a significant and atypical hardship on numerous occasions, by knowingly refusing to terminate acts, the acquiescence of such custom, practice, or policy . Which contributed to or proximately caused the above described abuses as delineated in paragraphs 1 thru 56 . All in violation of plaintiff's Eighth Amendment Cruel & Unusual Punishment Clause, and/or 14th Amendment Due Process Clause.

60.) The actions , failure , or ommittance to act by all defendants herein , in the unnecessary wanton ,callous , malicious , and sadistic use of restraints by employees at D. C. P. to plaintiff on numerous occasions , violated plaintiff's state rights and amounts to Official Oppression in violation of 18 Pa. C. S. 5301, by knowingly refusing to terminate the custom , practice , or policy, the acquiescence of such contributed to or proximately caused the above described actions delineated in paragraphs 1 thru 56 .

61.) The actions, failure, or ommittance to act by defendant Jeffrey T. Haste  Prison Board Chairman) contributed to and proximately caused the unnecessary and prolonged deprivation of a mattress for several months , that posed an unreasonable risk of  and serious damage to the plaintiff's physical and emotional well-being, which constitutes deliberate indifference, and punishment by knowingly refusing to terminate, and the acquiescence of . Causing plaintiff to endure a significant amount of pain , stiffness , reduced mobility, and emotional and mental anguish. The excessive, unnecessary , wanton infliction of pain suffered as a result , subjected

plaintiff to a significant hardship over an extended period of time & constitutes a significant and atypical hardship , all in violation of plaintiff's Eighth Amendment Cruel & Unreasonable Punishment Clause, and/or 14th Amendment Due Process Clause.

62The actions, failure or ommittance to act by defendants Nichols (Deputy Warden of Treatment at D. C. P. ), D. W. Carroll (Deputy Warden of Security at D . C . P.) , Dominic DeRose (Warden at D. C. P. ), Full Prison Board at D. C. P. , Major Stewart, Capt. Nidiegh, Lt. Hostetter, and Lt. Carnazzo by knowingly refusing to terminate acts, the acquiescence of such contributed to and/or proximately caused the unnecessary and prolonged deprivation of a basic human need (mattress) for several months. That posed an unreasonable risk of and serious damage to the plaintiff's physical and emotional well being, causing plaintiff to endure a significant amount of pain, stiffness, reduced mobility, and emotional and mental anguish over an extended period of time, which amounts to punishment without penological justification. Which constitutes deliberate indifference. The significant hardship endured over an extended period of time constitutes a significant and atypical hardship in violation of plaintiff's Eighth Amendment Cruel & Unusual Punishment Clause, and/or 14th Amendment Due Process Clause , and the Equal Protection Clause for similarly situated persons .

63.) The actions, failure, or ommittance to act by defendants Commissioner Jeffrey T. Haste ( Prison Board Chairman ), Full Prison Board of D. C. P. , Dominic DeRose (Warden of D. C. P.), Nichols (Deputy Warden of Treatment at D. C. P. ), D. W. Carroll ( Deputy Warden pf Security at D. C. P.), Major Stewart, Capt. Nidiegh , Lt. Hostetter, and Lt. Carnazzo by knowingly refusing to terminate acts, the acquiescence of such which contributed to and/or proximately caused the unnecessary and prolonged deprivation of a mattress ( basic human need ) for several months, violated plaintiff's state rights under the Pa. Const. Article 1 section 1, 18 Pa. C. S. 5301, and Pa. Code 37 section 95.229 regarding bedding.

## RELIEF REQUESTED

WHEREFORE, the plaintiff requests that the court grant the following relief:

64.) Award compensatory damages jointly and severally against Defendants Jeffrey T. Haste, D. W. Carroll, Nichols, Dominic DeRose, The Full Prison Board, Major Stewart, Capt. Nidiegh, Lt. Hostetter, and Lt. Carnazzo  for the physical and emotional injuries incurred and sustained as a result of the prolonged mattress deprivation also the unnecessary and malicious use of retraints. By this demand the plaintiff seeks compensatory damages for the loss of privileges and quality of life in his living conditions in prison in the amount of $100,000. dollars and punitive damages in the amount of $50,000. dollars.

65.) Award compensatory damages severally against Defendant R. Adams for the pain and suffering sustained as a result of the sadistic, and malicious use of restraints causing plaintiff to

endure a loss of privileges and quality of life , in the amount of $50,000. , and $10.000. punitive damages.

66.) Plaintiff also seeks a jury trial on all issues triable by jury.

67.) Plaintiff also seeks recovery of costs in this suit.

68.) Any additional relief this court deems just,  proper , and equitable.

Dated: Nov. 20, 14                         Respectfully Submitted, Talu McClure

## VERIFICATION

 I  have read the forgoing complaint and hereby verify that the matters alleged herein are true, except as to matters alleged on information and belief, and , as to those , I believe them to be true. I certify under penalty and perjury that the forgoing is true.

Executed on this day 11 / 20 / 14                 Signature: Talu McClure

**EXHIBIT A**

To: Dauphin County Solicitor - Curcillo
From: Tabu R. McClive #2-512
Re: Grievance Appeal /Restraints
Date: 7/15/13

This is an appeal concerning the unnecessary and malicious use of restraints by D.C.P. personel. I initially filed this grievance on Feb. 28, 2013 to Warden Demore. I recieved a response dated Mar. 7, 2013 from Capt. Neidigh. I then appealed to the Prison Board Chairman, Jeffrey T. Haste, on Mar. 18, 2013; of which I recieved a response dated Mar. 26, 2013. I then appealed to the Full Prison Board on April 5, 2013. On June 25, 2013 I filed an appeal to the County Solicitor as I had yet to hear from or recieve a response in a timely manner. I recieved a response stating, "you must wait until you recieve that response and re-file your appeal with Solicitor Curcillo." I have just recently recieved the Full Prison Board's response, which was dated June. 26, 2013, where my initial complaint was validated and verified.

On Feb. 26, 13 I was called up front around 8:30 A.M. to see a Public Defender, while up front I was handcuffed behind my back and placed in a holding pen for over two (2) hours by myself by Sgt. Adams. During this time I had to use the rest-room but was unable to, Also my shoulder began to hurt. Sgt. Adams with his callous disregard, unprofessional, unnecessary, malicious and wanton use of restraints in such a fashion, only purpose was to punish and inflict pain on me. All of which, was in violation of D.C.P. policy and my constitutional rights to be free from cruel and unusual punishment, and due process. When I stated to

1 of 2

Sgt. Adams "how am I going to use the bathroom like this," he replied, "you figure it out."

The U.S. Supreme Court and other circuits have also held that that restraining prisoners in uncomfortable positions and denying access to water and toilet, violates the Eighth Amendment, see Hope v. Pelzer, 536 U.S. 730, 122 S. Ct 2508, 153 L.Ed 2d 666 (2002), and Gates v. Collier, 501 F.2d 291 5th Cir 1974).

Furthermore Sgt. Adams deviation from normal practices and prison policies, can also provide notice that his actions are improper. D.C.P. policy and practice at the time period and a directive by Major Stewart on Sept 11, 2012 stated that the policy of strictly disciplinary lock-in inmates in restraints. Restrained inmates are moved off of their housing unit in shackles and cuffs. However, when an inmate in restraints is placed in a cell or holding cage, those restraints are to be removed until such time that that inmate is moved from one unit to another."

Even more reason why the restraints should have been removed is that I was alone in the holding pen. These actions were unjustified and unwarranted as I was not breaking prison rules, nor was a misconduct issued stating such. Thank you for your attention in this matter.

Sincerely,

[signature]

3/06

2 of 2

# DAUPHIN COUNTY PRISON

**TO:**        Major Stewart

**FROM:**    Captain Mark Neidigh

**SUBJECT:**   Grievance - McClure, Tabu 42562

**DATE:**      March 7, 2013

On 03/07/2013 I began investigating a grievance submitted by inmate McClure, Tabu 42562 dated 02/28/13. In this written grievance inmate McClure states "on 02/27/13 at or about 9:00am I was called up front to see a public defender, while up front I was placed in a holding pen by myself with restraints on, behind my back for over an hour by Sgt. Adams. During this time I had to use the restroom and my shoulder began to hurt. The use of restraints were a wanton use, used to inflict a punishment or pain without due process. I ask that the callous disregard to how restraints are used at D.C.P be discontinued. Thank You!"

A review of the 0600-1400 Duty Roster for 02/27/2013 shows that Sgt. Ray Adams was posted in Spring Creek Control, not in Booking or the Lobby therefore if inmate McClure was in a holding cell it would not have been due to the actions of Sgt. Adams.

A review of the Prison video system on 02/27/2013 shows that inmate McClure was placed into the holding cell outside Booking upon his return from Court; this can be viewed on the Central to Front camera from 11:28:08 to 11:35:37 hours and 11:37:46 to 11:45:02 hours. A review of the Shakedown 2 camera at 11:35:46 hours shows that inmate McClure was taken into Booking to use the restroom. At no time while in the holding cell or while using the restroom did inmate McClure have handcuffs on. A review of the Central to Front camera at 11:45:15 hours shows inmate McClure being taken out of the holding cell and placed into handcuffs for his escort back to his housing unit.

Based on inmate McClure's extensive disciplinary history and current housing as a disciplinary lock in and also based on inmate McClure's history of threats towards staff (EO attached), he is required to be handcuffed when he is out of his cell as per current Prison Policy. As per a directive issued by Major Stewart on 09/14/12 (attached), "the policy of placing disciplinary lock-in inmates in mechanical restraints whenever off of their housing unit is still to be utilized,. However, when an inmate in restraints is placed in a cell or holding cage, those restraints are to be removed until such time as that inmate is moved from one area to another".

A review of the cameras and times as referenced in this report clearly shows that Prison Staff were acting in accordance with current Policy and Directive in this matter. Also shown is that Sgt. Ray Adams had no involvement in this alleged and untrue incident.

Based on the information gathered during my investigation it is my finding that this grievance is **without merit**.

3/12/13

The Warden has reviewed your complaint/grievance concerning conditions of confinement and has signed-off as indicated above. If you do not agree with the above findings, you may appeal to the next level. The appeal, along with any additional information, should be directed to the Administrative Offices for forwarding to the Prison Board Chairman at the Chair's weekly Prison meeting.

# DAUPHIN COUNTY PRISON



**Commissioners**
JEFFREY T. HASTE, Chairman
MICHAEL H.W. PRIES
GEORGE P. HARTWICK III

**Chief Clerk/Chief of Staff**
LAURA E. EVANS, ESQ.

**Warden**
DOMINICK L. DeROSE

**Deputy Warden/Treatment**
ELIZABETH A. NICHOLS

**Deputy Warden/Security**
LEONARD K. CARROLL

501 MALL ROAD
HARRISBURG, PENNSYLVANIA 17111
TELEPHONE: (717) 780-6800
FAX (717) 558-8825

TO:           Inmate Tabu McClure/ #42,562           **HOUSING: P1-003**

FROM:      Commissioner Jeffrey T. Haste, Prison Board of Inspectors Chairman

RE:           Your Grievance Appeal Dated March 18, 2013

DATE:      March 26, 2013

I have reviewed your complaint outlined in your correspondence to me dated 3/18/13. File records were pulled and thoroughly reviewed.

In your appeal, you state the Captain Neidigh's response is incorrect because you did not go to court on 2/27/13 and you are adamant that Sgt. Adams took you from your block to see an attorney. Your assertions are incorrect. Video evidence of that date clearly shows you returning from court. Moreover, in addition to the video evidence, the logs reveal that you left the facility for court and returned from court. You are also seen on video in the holding cage without handcuffs. You are on video going from the holding cage to booking to use the bathroom, again without handcuffs. At no time is Sgt. Adams with you. An independent review of the video confirms the findings of Captain Neidigh.

There is no basis for further action. The Warden's response stands as previously written. Therefore, your grievance appeal is denied.

If you do not agree with the above findings, you may appeal to the next level, that being the full Prison Board. This appeal, along with any additional information, should be directed to the Administrative Offices for forwarding to the Prison Board for review at its next scheduled monthly meeting.

Copy:  Administration
        Treatment File

# DAUPHIN COUNTY PRISON



**Commissioners**
JEFFREY T. HASTE, Chairman
MICHAEL H.W. PRIES
GEORGE P. HARTWICK III

**Chief Clerk/Chief of Staff**
LAURA E. EVANS, ESQ.

**Warden**
DOMINICK L. DeROSE

**Deputy Warden/Treatment**
ELIZABETH A. NICHOLS

**Deputy Warden/Security**
LEONARD K. CARROLL

501 MALL ROAD
HARRISBURG, PENNSYLVANIA 17111
TELEPHONE: (717) 780-6800
FAX (717) 558-8825

TO:        Inmate Tabu McClure / #42,562

FROM:    Frank J. Lavery, Jr., Esquire, Prison Board Solicitor

RE:        Grievance Appeal

DATE:     June 26, 2013

HOUSING: P3-005

The Dauphin County Prison Board, at its meeting held on June 26, 2013, reviewed your grievance appeal from Prison Board Chairman Jeffery T. Haste's denial of your complaint regarding an alleged denial of use of the restroom and improper use of restraints. I have been directed by the Prison Board to prepare this response to you on behalf of the Board.

In its deliberations, the Prison Board reviewed your concerns, as well as the pertinent records. In your underlying grievance and subsequent appeal to Commissioner Haste, you stated that the incident at issue occurred on 2/27/13. In this appeal, you have revised the date and stated the incident in question occurred on 2/26/13. A new investigation has been conducted and the video from that date and relevant times has been reviewed. It has been concluded that your allegations regarding being handcuffed in the bullpen are verified. However, at no time does it appear that you requested to use the restroom. Moreover, you are alone in the cell and therefore not in danger from any other inmates. The officer involved felt that this action was necessary as a result of your unruly behavior while in the previous holding cell. That officer has stated that you were screaming and continued this behavior even after being ordered to stop. Moreover, your records at this facility, and at others, indicate that you have a history of violent and combative behavior.

For the reasons noted above, the Prison Board has directed that your grievance appeal be denied.

If you do not agree with the above findings, you may appeal to the next level, that being the Dauphin County Solicitor. The appeal, along with any additional information, should be mailed directly to the Dauphin County Solicitor's Office, 2 South Second Street, Harrisburg, PA 17101, with a copy to the Warden for tracking purposes. The County Solicitor's decision will be final.

Copy:   Administration
         Treatment File

DAUPHIN COUNTY
# SOLICITOR'S OFFICE

Board of Commissioners

JEFFREY T. HASTE, Chairman
MIKE PRIES, Vice-Chairman
GEORGE P. HARTWICK III, Secretary

Solicitor
JOSEPH A. CURCILLO III, ESQ.

Assistant Solicitors
FREDRICK W. LIGHTY, ESQ.
BRUCE FOREMAN, ESQ.
GUY P. BENEVENTANO, ESQ.



**DAUPHIN COUNTY**
PENNSYLVANIA

2 SOUTH SECOND STREET
P. O. BOX 1295
HARRISBURG, PA 17108
(717) 780-6301

TO:     Inmate McClure/#GV-5093
        Dauphin County Prison
        501 Mall Road
        Harrisburg, PA 17111

FROM:   Joseph A. Curcillo, III, Esquire, Dauphin County Chief Solicitor

DATE:   July 31, 2012

RE:     Final Grievance Appeal – Restraints

I have reviewed your grievance concerning the alleged excessive use of restraints by correctional officers in Dauphin County Prison. Copies of the pertinent records, and the underlying appeal documents, have been provided to me for the review of this matter as well.

In your appeal you cite two cases that you believe are analogous to the situation in your appeal, *Hope v. Pelzer*, 536 U.S. 730 (2002) and *Gates v. Collier*, 501 F.2d 1291 (5th Cir. 1974). These two cases are distinguishable from your situation on several levels. In *Pelzer*, inmates were handcuffed to a hitching post for upwards of seven hours while being denied water and use of a restroom. The inmates in *Collier* were subject to conditions depriving them of the basic elements of hygiene and adequate medical treatment, plus those inmates were not provided with adequate protection against physical assaults from other inmates.

Your situation was markedly distinct from the conditions set forth above. You were justifiably restrained while alone in a holding cell for what you allege to be approximately two hours. This restraint was justified based on your previous behavior at this facility and at others. At no time does it appear that you ever requested the use of the restroom. Further, by being alone you were not subject to physical assaults from other inmates. The restraints that you were subject to were within protocol and served a legitimate penological interest.

After due consideration of the relevant documents and records, this office has determines that your grievance appeal is denied. This constitutes the final decision of Dauphin County on your grievance; no further appeals will be heard.

Very truly yours,

Joseph A. Curcillo, III, Esquire
Dauphin County Chief Solicitor

**EXHIBIT B**

To: Dauphin County Solicitor - Curcillo
From: Tabu X. McClure - #42562
Re: Grievance Appeal - Mattress Deprivation
Date: ~~████~~ 2013

In Mr. Lavery's response he states I am not being de-
prived of my mattress and am given a mattress for sleeping purposes
between the hours of 9:00 p.m. - 8:00 a.m. He further states
there is a legitimate penological interest in restricting my access
to a mattress.

Before I address his response I want to note that a
mattress is a basic human need and not a privelage! During the
course of this grievance process the following persons are aware,
have been made aware, or are directly responsible for my so-
called "mattress restriction." Commissioner Haste, Warden DeRose,
Deputy Warden Nichols, Deputy Warden Carroll, Major Stewart, Capt.
Neidigh, Lt. Carnazzo, Lt. Hostetter, along with untold numerous
John Doe's that comprise the Full Prison Board.

On Feb. 9, 2013 I was accused of and found guilty of damaging
or destroying county property. I was immediately placed on "mattress
restriction" and have been deprived of my mattress until the present,
which is April 29, 2013, almost a total of 3 months so far. I was given
30 days disciplinary custody, which has come and gone, with a 42.00$
assessment for damages. Since the initial incident of Feb. 9, 2013
there has not been another incident with me concerning the
misuse, damaging or destroying of county property. The alleged
behavior has long since ceased, so there is no justification or
penological interest in such a prolonged deprivation that has occurred.
Due to the prolonged deprivation my physical health, along

with my emotional well being has begun to degenerate. I now have lower back pain with occasional tingling sensations in my right leg. I have seen sick call three different times and have only been given motrin or asperin to alleviate the pain. I am constantly waking up in the middle of the night with fears of my mattress being taken from me. I was diagnosed with situational depression and this situation has only made it worse.

It is undisputed that the treatment a prisoner recieves in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment. The Eighth Amendment imposes duties on [prison] officials, who must provide humane conditions of confinement; these officials must ensure that inmates recieve adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of the inmates; see Farmer v. Brennan, 511 U.S. 825, 832, 114 S.Ct. 1970. State pre-trial detainees are shielded from cruel and unusual punishments by the Fourteenth Amendments Due Process clause, which provides similar if not greater protection than the Cruel and Unusual Punishments clause, see Bell v. Wolfish, 441 U.S. at 545, 99 S.Ct.

A prison official violates the Eighth Amendment when he/she 1) shows a subjective deliberate indifference to, 2) conditions posing a substantial risk of serious harm to the inmate; whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.

As noted earlier, a mattress is not a privelage, but a basic human need! One of the factors to be considered in determining whether a constitutional violation has occurred is the duration of the depri-

(page) 2

vation. It has now been almost 90 days (3 months) since the deprivation began. To satisfy the two elements to the Eighth Amendment, the deprivation be objectively, sufficiently serious, a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities, and must show deliberate indifference to inmates health or safety. Both of which can be easily established in this case.

Also, although I loathe to do so, at this point I have no other alternative and can only conclude after observing another inmate, who was similarly situated (mattress restriction) as I, recieve totally opposite treatment. Anthony R. Spears #72-309, who on 3/20/13 was placed on "mattress restriction" from 8:00 a.m. - 8:00 p.m., and again on 3/27/13 was accused of destroying county property a second time, i.e. mattress. On 4/23/13 he was taken off "mattress restriction", which was a total of 33 days. He was accused of damaging county property on two seperate occasions, me only once. His restriction lasted a total of 33 days, mines almost 3 times as long and still counting. His from 8:00 a.m. - 8:00 p.m. a total of 12 hours, mines from 8:00 a.m. - 9:00 p.m. a total of 13 hours. Mr. Spears is a white caucasian male, I, a black African american male. The disparity in treatment has led me to believe that racism may play more of a part than anything I've done to warrant such treatment. Is it because he's white and I am black, that he is off "mattress restriction" and I am still on? A question of fact for a jury to decide I suppose. Therefore I believe I can state a claim under the Equal Protection Clause of the fourteenth Amendment for similarly situated persons also.

Next in Mr. Lavery's response to the "wanton practice" and "use of restraints" "to inflict pain or cause harm unnecessarily", he uses my record from the Department of Corrections stating I have assaulted correction officer's, which is irrelevant and not germane, as those incidents he references occurred over 14 years ago. Does Mr.

(page) 3

LAVERY know the difference between violent and disruptive? What fights have I been in or assaults on C.O.'s at D.C.P.? Therefore his premise is unfounded.

Moving on the relief I request is to stop the ARBITRARY MATTRESS deprivation, unless a uniform system is implemented. 500.00$ (five hundred) dollars a day for every day I was deprived of my mattress, roughly 45,000 (forty-five) thousand) dollars and zero cents. Also to stop + discontinue the wanton practice of using restraints maliciously to inflict pain or cause harm.

Sincerely,
Talu McClure  c/c File

(PAGE) 4

# DAUPHIN COUNTY PRISON

**TO:**      Major Stewart

**FROM:**    Lt. Carnazzo

**SUBJECT:**  Grievance from inmate McClure, Tabu  D-42562.

**DATE:**    February 22, 2013

The above named inmate has submitted a written complaint via request slip. He is claiming that depriving him of his mattress is cruel and unusual punishment.

On 02/09/13 inmate McClure destroyed count property and used it to create a security risk. This action was documented on an EO submitted by Lt. Walter Hostetter (Copy attached). At that time Lt. Walter Hostetter issued a memo stating that D.W. Carroll placed inmate McClure on a mattress restriction (Copy attached).

The conditions cited in this complaint have been authorized by D.W. Carroll. This was in response to inmate McClure's actions. Therefore, I find this complaint is without merit.

The Warden has reviewed your complaint/grievance concerning conditions of confinement and has signed-off as indicated above. If you do not agree with the above findings, you may appeal to the next level. The appeal, along with any additional information, should be directed to the Administrative Offices for forwarding to the Prison Board Chairman at the Chair's weekly Prison meeting.

# DAUPHIN COUNTY PRISON



**Commissioners**
JEFFREY T. HASTE, Chairman
MICHAEL H.W. PRIES
GEORGE P. HARTWICK III

**Chief Clerk/Chief of Staff**
LAURA E. EVANS, ESQ.

**Warden**
DOMINICK L. DeROSE

**Deputy Warden/Treatment**
ELIZABETH A. NICHOLS

**Deputy Warden/Security**
LEONARD K. CARROLL

501 MALL ROAD
HARRISBURG, PENNSYLVANIA 17111
TELEPHONE: (717) 780-6800
FAX (717) 558-8825

TO:        Inmate Tabu McClure/ #42,562            **HOUSING:  P1-003**

FROM:    Commissioner Jeffrey T. Haste, Prison Board of Inspectors Chairman

RE:        Your Grievance Appeal Dated 3/15/13

DATE:    March 26, 2013


I have reviewed your complaint outlined in your correspondence to me dated 3/15/13.  File records were pulled and thoroughly reviewed.

In your appeal, you complain that you are being deprived of a mattress and about the use of restraints during rec and shower time.  First, you are not being deprived of a mattress.  Due to your persistent destruction of mattresses, you are issued a mattress for sleeping between the hours of 9:00 p.m. and 8:00 a.m.  Moreover, because you utilized your destroyed mattress to cover the window to your cell, this policy as it relates to you serves a legitimate penological interest and is in place in order to maintain the safety and security of this facility.  Finally, the requirement that you remain shackled during rec and shower time also serves a legitimate penological interest and is in place to ensure the safety of both you and staff.  The classification leading to this requirement is the result of your own violent behavior directed to inmates and/or staff.

There is no basis for further action.  The Warden's response stands as previously written.  Therefore, your grievance appeal is denied.

If you do not agree with the above findings, you may appeal to the next level, that being the full Prison Board.  This appeal, along with any additional information, should be directed to the Administrative Offices for forwarding to the Prison Board for review at its next scheduled monthly meeting.


Copy:  Administration
          Treatment File

# DAUPHIN COUNTY PRISON



**Commissioners**
JEFFREY T. HASTE, Chairman
MICHAEL H.W. PRIES
GEORGE P. HARTWICK III

**Chief Clerk/Chief of Staff**
LAURA E. EVANS, ESQ.

**Warden**
DOMINICK L. DeROSE

**Deputy Warden/Treatment**
ELIZABETH A. NICHOLS

**Deputy Warden/Security**
LEONARD K. CARROLL

501 MALL ROAD
HARRISBURG, PENNSYLVANIA 17111
TELEPHONE: (717) 780-6800
FAX (717) 558-8825

TO:         Inmate Tabu McClure / #42,562                      HOUSING: P1-003

FROM:       Frank J. Lavery, Jr., Esquire, Prison Board Solicitor

RE:         Grievance Appeal

DATE:       April 17, 2013

The Dauphin County Prison Board, at its meeting held on April 17, 2013, reviewed your grievance appeal from Prison Board Chairman Jeffery T. Haste's denial of your complaint regarding your placement on mattress restriction and the use of restraints. I have been directed by the Prison Board to prepare this response to you on behalf of the Board.

In its deliberations, the Prison Board reviewed your concerns, as well as the pertinent records. In your appeal you claim that your "mattress deprivation" cannot be justified. You are not being deprived of a mattress. You are given a mattress for sleeping purposes between the hours of 9:00 p.m. and 8:00 a.m. While you assert that you only destroyed the mattress in an effort to use it as a sleeping bag, the records reflect that you used the stuffing from the mattress to cover the window on your cell door, thereby creating a security risk. As such, there is a legitimate penological interest in restricting your access to a mattress.

You also claim that the use of restraints constitutes a "wanton practice" and is "used to inflict pain or cause harm unnecessarily." It should be noted that you have complained of neck pain on one (1) occasion following the use of restraints. However, that complaint was resulting from the use of the restraint chair, and not the use of handcuffs and shackles as complained of in your appeal. As further support of your proposition that you should not be restrained, you allege that there is no record of any violent behavior. Your disciplinary file here, and at PA DOC, indicates otherwise. During your most recent incarceration at this facility beginning on 12/26/12, it has been documented that you exhibited violent behavior on at least four (4) occasions. Additionally, your records from DOC indicate that you assaulted an officer and made numerous threats to employees and/or other inmates. You also have been charged, and found guilty of, at least three (3) assaults while housed at DOC throughout the years.

For the reasons noted above, the Prison Board has directed that your grievance appeal be denied.

If you do not agree with the above findings, you may appeal to the next level, that being the Dauphin County Solicitor. The appeal, along with any additional information, should be mailed directly to the Dauphin County Solicitor's Office, 2 South Second Street, Harrisburg, PA 17101, with a copy to the Warden for tracking purposes. The County Solicitor's decision will be final.

Copy:   Administration
        Treatment File

DAUPHIN COUNTY
# SOLICITOR'S OFFICE

Board of Commissioners

JEFFREY T. HASTE, Chairman
MIKE PRIES, Vice-Chairman
GEORGE P. HARTWICK III, Secretary

Solicitor
JOSEPH A. CURCILLO III, ESQ.

Assistant Solicitors
FREDRICK W. LIGHTY, ESQ.
BRUCE FOREMAN, ESQ.
GUY P. BENEVENTANO, ESQ.

**DAUPHIN COUNTY**
PENNSYLVANIA

2 SOUTH SECOND STREET
P. O. BOX 1295
HARRISBURG, PA 17108
(717) 780-6301

TO:        Inmate McClure - #42-562
           Dauphin County Prison
           501 Mall Road
           Harrisburg, PA 17111

FROM:      Joseph A. Curcillo, III, Esquire, Dauphin County Chief Solicitor

DATE:      May 20, 2013

RE:        Final Grievance Appeal – Mattress Restriction

I have reviewed your grievance concerning the restriction which allows you to only have a mattress in your cell from 9:00 P.M. to 8:00 A.M. everyday. Copies of the pertinent records, and the underlying appeal documents, have been provided to me for the review of this matter as well.

You have been placed on a mattress restriction for not only destroying your mattress but also for using the stuffing of the mattress to cover the window in your cell door. By covering this window the prison staff cannot see in, creating a security risk. As such, your privilege of having a mattress is limited to sleeping hours. This is not an unreasonable restriction based upon your previous actions. You are not being deprived of a mattress; you are simply not permitted to have a mattress in your cell at those times when it is not being used for sleep.

Further, the restrictions that are placed on inmates are determined on a case by case basis and as such, the totality of the circumstances is reviewed to determine restrictions. Hence, attempting to compare sanctions received by different inmates on a superficial level is not always accurate. However, I can assure you that the inmate's race is not implicated in the decision making process.

The use of restraints is for the safety of the correctional officers and the other inmates. You have demonstrated that you are a threat to the correctional officers through your previous acts of violence. As recently as January 1, 2013, you were accused of threatening the life of Sgt. Lewis stating that you were going to "blow [his] head off with a .223" and "[he] won't see the shot coming." This threat was coupled with a motion of holding, aiming, and firing a rifle at Sgt. Lewis.

After due consideration of the relevant documents and records, this office has determines that your grievance appeal is denied.  This constitutes the final decision of Dauphin County on your grievance; no further appeals will be heard.

Very truly yours,

Joseph A. Curcillo, III, Esquire
Dauphin County Chief Solicitor

**EXHIBIT C**

# Declairation

## Statement of Facts

I, Andthony Ray Spears, verify that the facts set forth in this statement are true and correct. This verification is made subject to the penalities of Section 4904 of the Pennsylvania crimes code (18 Pa. C.S. § 4904) relating to unsworn falsification to authorities.

On March 20th, 2013, I was placed on a 12 hr. a day mattress restriction while incaccerated in Dauphin County Prison. I have been on these 12 hr. a day mattress restrictions from 3/20/13 and I am currently still on these restrictions. Todays date is April 22nd, 2013. I have no idea of when these restrictions will be lifted. These restrict-ions are based on (2) two false allegations of me destroying a mattress. Let's assume, arguendo, that the allegations are true. The last incident occured on March 27th, 2013. Two (2) days shy of four (4) wks. Since there have been no incidents concerning alleged destruction of a mattress, and alleged behavior ceased almost four (4) wks. ago, there is no reason that these restrictions should not be lifted.

I am writing this statement as documentary evidence of D.C.P.'s history/reputation of their Cruel & Unusual punishment and how they violate pre-trial detainee's Due Process Rights.

Declairant — Andthony Spears

Date: April 22nd, 2013

## Declairation

This declairation is made under the laws of perjury & subject to Pa. C.S.§4904

I, Andthony Ray Spears, a white male, currently incarcerated @ Dauphin County Prison, have been so for (31) consecutive months.

On 3/20/13 I was accused of violating Prison rules by destroying a County issued mattress. For this alleged misconduct, I was placed on a "12hr" a day mattress restriction. Meaning, the C/o's would come in my cell @ 8a.m. & take my mattress & @ 8p.m. it would be returned to my cell.

On 3/27/13 I was accused, for a second time, of violating Prison rules by destroying a second County issued mattress. Two seperate & distinct offenses of allegedly destroying a Prison issued mattress.

On 4/23/13, these sanctions/mattress restrictions were lifted & my mattress was returned to me for "24 hr" utilization. From the beginning of the first "destroyed mattress allegation" until sanctions were lifted, constituted approximately (34) days, & from the second allegation until sanctions were lifted, constituted approximately (27) days.

Declairant - Andthony Ray Spears

Date of Signature: April 24th, 2013

# Declaration / Statement of Facts

I, Jaysen Emerson, verify that the facts set forth in this statement are true and correct to the best of my knowledge. This verification is made subject to the penalties of perjury of the Pa. Crimes Code section 4904 (18 Pa.C.S.A. §4904) relating to unsworn falsification to authorities.

On 5-29-13 I, Jaysen Emerson, was accused of breaking Dauphin County Prison Rules, by damaging or destroying county property. I was accused of destroying a county issued mattress. On      date I had my hearing for the accusation and recieved 30 days disciplinary custody or hole time, and assessed a cost of 42.00 dollars for the mattress. At no time was I placed on a mattress restriction or deprived of my mattress.

| 6-3-13 |
Date

Jaysen Emerson #
Declarant

To: Clerk of Court

From: Tabu McClure

Date: Nov. 20th, 2014

Enclosed is a $1983 civil suit, along with an in forma pauperis and authorization form that I would like filed in your court. I ask that you send me the necessary forms (USM-285) so that I can serve the suit to the appropriate persons. You can also send the waiver of summons forms, if they choose to waive service. Could you also send me any instructions that I may need.

Currently I am on writ at Dauphin County Prison, 501 Mall Rd., Harrisburg, Pa. 17111 and ask that any correspondence be mailed to that address. My home institution is SCI-Somerset 1600 Walters Mill Rd, Somerset, Pa. 15510, when I return, I will notify the court of a change of address.

Sincerely, Tabu McClure



NAME Tahi McClure   42-562
D.C.P # ____
DAUPHIN COUNTY PRISON
501 MALL ROAD
HARRISBURGH, PA., 17111

No Fee
Enclosed
~ $

RESEIVED
SCRANTON
NOV 25 2014
PER _____
DEPUTY CLERK

United States District
for the
Middle District of Penns
William J. Nealon Fede
235 North Washing
P.O. Box 1148
Scranton, Pennsylva

✳LEGAL  MA