IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TABU N. MCCLURE, | : | |
| | : | |
| Plaintiff | : | CIVIL NO. 1:14-CV-2249 |
| | : | |
| vs. | : | |
| | : | |
| COMMISSIONER JEFFREY T. HASTE, et al., | : | (Judge Rambo) |
| | : | |
| Defendants | : | |

MEMORANDUM AND ORDER

**Background**

On November 25, 2014, Tabu N. McClure, an inmate presently confined at the State Correctional Institution, Somerset, Pennsylvania ("SCI-Somerset"), filed a pro se civil rights complaint pursuant to 42 U.S.C. § 1983 relating to the conditions of confinement which he was exposed to while incarcerated at the Dauphin County Prison as a pretrial detainee and parole violator. Doc. 1.  McClure names the following individuals as defendants: (1) Commissioner Jeffrey T. Haste; (2) Warden Dominic DeRose; (3) Deputy Warden Nichols; (3) Deputy Warden D.W. Carroll; (4) Major Stewart; (5) Captain Neidigh; (6) Lieutenant Carnazzo;

(7) Lieutenant Hostetter; and (8) Sergeant R. Adams. Id. McClure also names the Board of Dauphin County Prison and an "Unknown number of John Does" as defendants. Id. Along with his complaint, McClure submitted a motion for leave to proceed in forma pauperis under 28 U.S.C. § 1915.

Pending before the court is McClure's motion for appointment of counsel. Doc. 24. The motion states in toto as follows:

> 1. Plaintiff is unable to afford counsel in this matter.
>
> 2. The issues involved in this case are complex.
>
> 3. The plaintiff has very limited access to the law library, where he is forced to sign up two (2) weeks in advance in order to access the law library at SCI Somerset.
>
> 4. The plaintiff has a limited knowledge of the law and in the interest of justice an attorney could help navigate through the process of litigation.
>
> 5. The plaintiff has written to a number of attorneys asking them to handle the case, namely Angus Love of the Pennsylvania Institute Law Project.

Doc. 24. For the reasons set forth below the motion will be denied.

McClure's complaint is typewritten and consists of 68 paragraphs. Id. The pertinent factual allegations which are somewhat disjointed and rambling are set forth in paragraphs 17 through 55. Id. Those paragraphs reveal that McClure on February 8, 2013, was incarcerated at the Dauphin County Prison as a pretrial detainee, and on that date he received a misconduct for refusing to turn on his cell light during a shakedown. Id., ¶ 17. McClure claims that he was removed from his cell by guards who used mace and physical force and "placed [him] in a strip cell with no clothing or sheets, [or] blanket, and no toilet paper." Id., ¶ 18. McClure claims it was the middle of winter and the cell was very cold and "so after about two hours still under these conditions [he] ripped the stuffing from inside of [his] mattress and crawled inside of it like a sleeping bag to stay warm." Id., ¶ 19. McClure alleges that during this time he repeatedly asked a correctional officer for toilet paper, sheets and a blanket but his requests were denied. Id., ¶ 20. McClure then alleges that he was issued a misconduct for destroying county

property, his mattress was taken from him and he was restricted to having the same damaged mattress from 8:00 a.m. to 9:00 p.m. based on a memo issued by Lieutenant Hostetter on February 9, 2013, which restriction was approved by Deputy Warden Carroll. Id., ¶¶ 21-24. McClure contends that the mattress which he was permitted to use between the hours of 8:00 a.m. and 9:00 p.m. was defective and useless because a substantial amount of the "internal insulation" had been removed from the mattress."[1] Id., ¶ 25. McClure alleges that over the "next several months until September 9, 2013" he "was forced to use this defective shell of a mattress, while in the hole or segregation[.]" Id., ¶ 26.

McClure then switches gears and sets forth allegations regarding his ability to shower and engage in recreation while housed at Dauphin County Prison. Id., ¶¶ 27-28. McClure contends that from February 10 through 16, 2013, while in segregation he was required to go to the shower and recreation in shackles and

---

1. The court assumes based on the allegations that it was McClure who removed the internal insulation.

handcuffs and "was only given 30 minutes for showering and recreation altogether." Id.

McClure next contends that after being deprived of a mattress and because of a pre-existing back problem from lifting weights, he began to experience a substantial amount of pain in the lower back and occasional tingling and numbness sensation in his legs. Id., ¶¶ 29-31. As a result of these symptoms he claims he "signed up for medical" beginning on or about March 20, 2013, and "each time [he] was only given Motrin for five or seven days." Id. McClure contends that he lost sleep, he experienced a stiff back and had reduced mobility and the conditions aggravated previously diagnosed mental and emotional problems. Id.

McClure alleges that on February 26, 2013, he had a visit from his public defender and apparently prior to that visit he was handcuffed behind his back and placed in a holding pen or cell by Sergeant Adams for over two hours. McClure contends that once he was placed in the holding pen or cell the use of the handcuffs was not "justified penologically." Id., ¶¶ 32-35. Furthermore, he claims that during that two hour

period he had to use the restroom and asked Sergeant Adams how he was going to use the bathroom with his hands were cuffed behind his back and claims that Sergeant Adams responded by stating "you figure it out." Id.

McClure next claims that he filed a grievance relating to the incident with Sergeant Adams and that Captain Neidigh denied the grievance and his appeals were denied by Warden DeRose, Prison Board Chairman Haste, the Full Prison Board and the County Solicitor. Id., ¶¶ 36-41.  McClure alleges that Sergeant Adams violated a policy established in September, 2012, by Major Stewart which required inmates to be taken out of handcuffs when placed in a holding cell or cage and that corrections officers have been violating that policy. Id.

McClure  contends that he was treated differently than other prisoners who engaged in destruction of county property. Id.,¶¶ 42-44. He claims that one inmate who destroyed property on two occasions only received a 34 days mattress restriction and a monetary assessment of $42.00 and another inmate who

destroyed property received 30 days of disciplinary confinement and a monetary assessment of $42.00 but he was not placed on a mattress restriction. Id.

McClure next alleges that from March 10 through 18, April 19 through May 2 and on July 10, 2013, he was again placed in segregation and was forced to shower with handcuffs and shackles and was only allowed 30 minutes for recreation or 2.5 hours per week outside of his cell and he was deprived of a mattress and "only had a concrete slab to either sit or lie on." Id.,¶¶ 45-47 & 51.

Finally, McClure contends that he filed numerous grievances regarding the mattress restriction and the use of physical restraints and the grievances and/or appeals were ignored or denied by Lt. Hostetter, Deputy Warden Carroll, Warden DeRose, Prison Board Chairman Haste, the Full Prison Board, and the County Solicitor.

McClure attached to his complaint a copy of the grievance he filed relating to the use of restraints and a copy of the grievance relating to the mattress restriction as well as the responses by prison officials.  Doc. 1, at 10-26.  The response of the

Prison Board to the grievance relating to the use of restraints states in pertinent part as follows:

> The Dauphin County Prison Board, at its meeting held on June 26, 2013, reviewed your grievance appeal from Prison Board Chairman Jeffery (sic) T. Haste's denial of your complaint regarding an alleged denial of use of the restroom and improper use of restraints. . . .
> In its deliberations, the Prison Board reviewed your concerns, as well as the pertinent records. In your underlying grievance and subsequent appeal to Commissioner Haste, you stated that the incident at issue occurred on 2/27/13. In this appeal, you have revised the date and stated the incident in question occurred on 2/26/13. A new investigation has been conducted and the video from that date and relevant times has been reviewed. It has been concluded that your allegations regarding being handcuffed in the bullpen are verified. However, at not time does it appear that you requested to use the restroom. Moreover, you are alone in the cell and therefore not in danger from any other inmates. The officer involved felt that this action was necessary as a result of your unruly behavior while in the previous holding cell. That officer has stated that you were screaming and continued this behavior even after being ordered to stop. Moreover, your records at this facility, and at others, indicate that you have a history of violent and combative behavior.

Id. at 15. The response of the Prison Board to the grievance relating to the mattress restriction states in pertinent part as follows:

> In your appeal you claim that your "mattress deprivation" cannot be justified. You are not being deprived of a mattress. Your are given

8

>    a mattress for sleeping purposes between the
>    hours of 9:00 p.m. and 8:00 a.m. While you
>    assert that you only destroyed the mattress in
>    an effort to use it as a sleeping bag, the
>    records reflect that you used the stuffing from
>    the mattress to cover the windows on your cell
>    door, thereby creating a security risk. As
>    such, there is a legitimate penological interest
>    in restricting your access to a mattress.

Id. at 24. The response further addresses an additional claim of McClure regarding the use of restraints as follows:

>    You also claim that use of restraints
>    constitutes a "wanton practice" and is
>    "used to inflict pain or cause harm
>    unnecessarily." It should be noted that you
>    have complained of neck pain on one (1)
>    occasion following the use of restraints.
>    However, that complaint was resulting from the
>    use of the restraint chair, and not the use of
>    handcuffs and shackles as complained of in
>    your appeal. As further support of your
>    proposition that you should not be restrained,
>    you allege that there is no record of any
>    violent behavior. Your disciplinary file here,
>    and at PA DOC, indicates otherwise. During
>    your most recent incarceration at this facility
>    beginning on 12/26/12, it has been documented
>    that you exhibited violent behavior on at least
>    four (4) occasions. Additionally, your records
>    from DOC indicate that you assaulted an officer
>    and made numerous threats to employees and/or
>    inmates. You also have been charged, and found
>    guilty of, at least three (3) assaults while
>    housed throughout the years.

Id.

Although prisoners have no constitutional or statutory rights to appointment of counsel in a civil case, a court does have broad discretionary power to appoint counsel under 28 U.S.C. § 1915(d). <u>Tabron v. Grace</u>, 6 F.3d 147, 153, 155-57 (3d Cir. 1993) (setting forth non-exhaustive list of factors to be considered in ruling on motion for appointment of counsel, including the merits of the claims and the difficulty of the legal issues), <u>cert. denied</u>, 114 S.Ct. 1306 (1994); <u>Ray v. Robinson</u>, 640 F.2d 474, 477 (3d Cir. 1981).  The Court of Appeals for the Third Circuit has stated, however, that appointment of counsel for an indigent litigant should only be made "upon a showing of special circumstances indicating the likelihood of substantial prejudice to him resulting, for example, from his probable inability without such assistance to present the facts and legal issues to the court in a complex but arguably meritorious case."  <u>Smith-Bey v. Petsock</u>, 741 F.2d 22, 26 (3d Cir. 1984).  But no part of the discussion in <u>Smith-Bey</u> of circumstances warranting appointment of counsel should be interpreted to mean that "appointment is permissible <u>only</u> in exceptional

circumstances and that, in the absence of such circumstances, the court has no discretion to appoint counsel." Tabron, 6 F.3d at 155.

McClure's motion fails to set forth sufficient special circumstances or factors warranting appointment of counsel. See Tabron v. Grace, supra. In the pleadings submitted by McClure to date, he has demonstrated that he is capable of presenting his claims. In fact McClure has already responding by filing a brief in opposition (Doc. 23) to a motion to dismiss filed by Defendants. Furthermore, this court's liberal construction of pro se pleadings, e.g., Haines v. Kerner, 404 U.S. 519, 520 (1972), coupled with McClure's apparent ability to litigate this action pro se, mitigate against the appointment of counsel. Moreover, the legal and factual issues are relatively uncomplicated, and the court can not say, at least at this point, that McClure will suffer substantial prejudice if he is forced to prosecute this case on his own.

Therefore, McClure's motion for appointment of counsel will be denied. In the event, however, that future proceedings demonstrate the need for counsel, the matter may be reconsidered either <u>sua sponte</u> or upon a motion properly filed by Plaintiff.

**ACCORDINGLY**, this 22nd day of December, 2015, **IT IS HEREBY ORDERED THAT** McClure's motion for appointment of counsel (Doc. 24) is **DENIED**.

s/Sylvia H. Rambo
_____
United States District Judge