IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

TABU N. MCCLURE,               :
                               :
        Plaintiff              :    CIVIL NO. 1:14-CV-2249
                               :
    vs.                        :
                               :
COMMISSIONER JEFFREY T.        :    (Judge Rambo)
HASTE, et al.,                 :
                               :
        Defendants             :

## MEMORANDUM

## Background

On November 25, 2014, Tabu N. McClure, an inmate presently confined at the State Correctional Institution, Somerset, Pennsylvania ("SCI-Somerset"), filed a pro se civil rights complaint pursuant to 42 U.S.C. § 1983 relating to the conditions of confinement which he was exposed to while incarcerated at the Dauphin County Prison as a pretrial detainee and parole violator.[1] Doc. 1.  McClure contends those conditions violated his rights under the Eighth and Fourteenth Amendments to the United States Constitution. Id. With

---

1.  It is not clear as to whether or not McClure was serving a sentence for a parole violation or merely detained as an alleged parole violator as well as waiting trial on new charges.

respect to the Eighth Amendment, McClure claims he was subjected to cruel and unusual punishment and with regard to the Fourteenth Amendment he claims he was denied due process and equal protection.[2] Id.  McClure names the following individuals as defendants: (1) Commissioner Jeffrey T. Haste; (2) Warden Dominic DeRose; (3) Deputy Warden Nichols; (3) Deputy Warden D.W. Carroll; (4) Major Stewart; (5) Captain Neidigh; (6) Lieutenant Carnazzo; (7) Lieutenant Hostetter; and (8) Sergeant R. Adams. Id.  McClure also names the Board of Dauphin County Prison and an "Unknown number of John Does" as defendants.[3]  Id.  Along with his complaint,

---

[2]. McClure also alleges that his rights were violated under a section of the Pennsylvania Crimes Code relating to official oppression, 18 Pa.C.S. § 5301. These allegations are not cognizable under 42 U.S.C. § 1983. Elkin v. Fauver, 969 F.2d 48, 52 (3d Cir. 1992)("An alleged violation of state law . . . does not state a claim under section 1983."); Funk v. Wetzel, 2015 WL 2338995, *5 (M.D. Pa. May 12, 2015); Spell v. Allegheny County Administration, 2015 WL 1321695, *4 (W.D. Pa. Mar. 24, 2015).

[3]. The "John Does" have not been identified or served by McClure. It is well-settled that the use of John/Jane Doe defendants absent compelling reasons will not suffice and the district court may dismiss such defendants if plaintiff, after being granted a reasonable period of discovery, fails to identify the

(continued...)

McClure submitted a motion for leave to proceed _in forma pauperis_ under 28 U.S.C. § 1915.

McClure's complaint is typewritten and consists of 68 paragraphs. _Id._  The pertinent factual allegations which are somewhat disjointed and rambling are set forth in paragraphs 5 through 55. _Id._  Those paragraphs reveal that McClure on February 8, 2013, was incarcerated at the Dauphin County Prison as a pretrial detainee and parole violator, and on that date he received a misconduct for refusing to turn on his cell light during a shakedown. _Id._, ¶¶ 5 and 17.  McClure claims that he was removed from his cell by correctional officers who used mace and physical force and "placed [him] in a

---

3.  (...continued)
defendants.  _Sheetz v. Morning Call_, 130 F.R.D. 34 (E.D. Pa. 1990).  Based on this court's review of the record, although his action was filed almost 15 months ago, McClure has not yet provided this court with the identities of the John Doe defendants.
Thus, this court will grant McClure thirty (30) days from the date of this memorandum in which to properly identify the John Doe defendants.  If McClure fails to timely identify those defendants, they shall be dismissed from this action under the authority of _Sheetz_.

strip cell with no clothing or sheets, [or] blanket, and no toilet paper." Id., ¶ 18.  McClure claims it was the middle of winter and the cell was very cold and "so after about two hours still under these conditions [he] ripped the stuffing from inside of [his] mattress and crawled inside of it like a sleeping bag to stay warm." Id., ¶ 19. McClure alleges that during this time he repeatedly asked a correctional officer for toilet paper, sheets and a blanket but his requests were denied. Id., ¶ 20.  McClure does not identify the correctional officers who allegedly removed him from his cell, placed him in a strip cell with no clothing and failed to provide him with toilet paper, sheets and a blanket. Id., ¶¶ 17-20.  McClure then alleges, without identifying the responsible correctional officers, that he was issued a misconduct for destroying county property and his mattress was taken from him. Id., ¶ 21. McClure then avers that he was restricted to having the same damaged mattress from 8:00 a.m. to 9:00 p.m. based on a memo issued by Lieutenant Hostetter on February 9, 2013. Id.  McClure than states "[u]pon information and

belief" that Lt. Hostetter "issued [the] memo at the behest of Deputy Warden Carroll's directive."[4] <u>Id.</u>, ¶ 22. McClure contends that Lt. Hostetter "instructed that he be given the same damaged mattress to use" between the hours of 8:00 a.m. and 9:00 p.m. <u>Id.</u>, ¶ 24.  McClure next contends that the mattress was defective and useless because a substantial amount of the "internal insulation" had been removed from the mattress."[5] <u>Id.</u>, ¶ 25. McClure alleges that over the "next several months until September 9, 2013" he "was forced to use this defective shell of a mattress, while in the hole or segregation[.]" <u>Id.</u>, ¶ 26.

---

4.  "Upon information and belief" averments are insufficient under <u>Iqbal</u> and <u>Twombly</u>, *infra*, unless (1) "the facts are peculiarly with the possession and control of the defendant" or (2) the "belief is based on factual information that makes the inference of culpability plausible."  <u>Arista Records, LLC v. Doe 3</u>, 604 F.3d 110, 120 (2d Cir. 2010).  Clearly the fact averred is not within the exclusive control of Defendant Carroll and McClure has not provided factual information which make the "inference of culpability plausible."  McClure does not allege he was privy to a written directive or that Defendant Hostetter stated that Deputy Warden Carroll issued such a directive.

5.  The court infers based on the allegations that it was McClure who removed the internal insulation.

McClure then switches gears and sets forth allegations regarding his ability to shower and engage in recreation while housed at Dauphin County Prison. Id., ¶¶ 27-28.  McClure contends that from February 10 through 16, 2013, a period of seven days, while in segregation he was required to go to the shower and recreation in shackles and handcuffs and "was only given 30 minutes for showering and recreation altogether." Id.  McClure does not specify the correctional officers who imposed these restrictions but merely avers "[u]pon information and belief" that it was the "policy, custom or practice at [the Dauphin County Prison] to use restraints on all inmates during shower and recreation while housed in segregation and to only give 30 minutes of recreation for five days a week." Id.

McClure next contends that after being deprived of a mattress and because of a pre-existing back problem from lifting weights, he began to experience a substantial amount of pain in the lower back and occasional tingling and numbness sensation in his legs. Id., ¶¶ 29-31.  As a result of these symptoms he claims he "signed up for medical" beginning on or about March

20, 2013, and "each time [he] was only given Motrin for five or seven days." Id.  McClure contends that he lost sleep, he experienced a stiff back and had reduced mobility and the conditions aggravated previously diagnosed mental and emotional problems. Id.

McClure alleges that on February 26, 2013, he had a visit from his public defender and apparently prior to that visit he was handcuffed behind his back and placed in a holding pen or cell by Sergeant Adams for over two hours. Id., ¶¶ 32-35.  McClure contends that once he was placed in the holding pen or cell the use of the handcuffs was not "justified penologically." Id. Furthermore, he claims that during that two hour period he had to use the restroom and asked Sergeant Adams how he was going to use the bathroom while his hands were cuffed behind his back and claims that Sergeant Adams responded by stating "you figure it out." Id.

McClure next claims that he filed a grievance relating to the incident with Sergeant Adams and that Captain Neidigh denied the grievance and his appeals were denied by Warden DeRose, Prison Board Chairman

Haste, the Full Prison Board and the County Solicitor. Id., ¶¶ 36-41. McClure alleges that Sergeant Adams violated a policy established in September, 2012, by Major Stewart which required inmates to be taken out of handcuffs when placed in a holding cell or cage and that corrections officers have been violating that policy. Id.

McClure contends that he was treated differently than other prisoners who engaged in destruction of county property.[6] Id.,¶¶ 42-44. He claims that one inmate who destroyed property on two occasions only received 34 days of mattress restriction and a monetary assessment of $42.00 and another inmate who destroyed property received 30 days of disciplinary confinement and a monetary assessment of $42.00 but he was not placed on a mattress restriction. Id.

McClure next alleges that from March 10 through 18, April 19 through May 2 and on July 10, 2013, he was again placed in segregation and was forced to shower with handcuffs and shackles and was only allowed 30

---

6. McClure admits he destroyed county property.

minutes for recreation or 2.5 hours per week outside of his cell and he was deprived of a mattress and "only had a concrete slab to either sit or lie on." Id.,¶¶ 45-47 & 51. McClure does not identify the correctional officers responsible for these conditions and restrictions. Id.

Finally, McClure contends that he filed numerous grievances regarding the mattress restriction and the use of physical restraints and the grievances and/or appeals were ignored or denied by Lt. Hostetter, Deputy Warden Carroll, Warden DeRose, Prison Board Chairman Haste, the Full Prison Board, and the County Solicitor.

McClure attached to his complaint a copy of the grievance he filed relating to the use of restraints and a copy of the grievance relating to the mattress restriction as well as the responses by prison officials. Doc. 1, at 10-26. The response of the Prison Board to the grievance relating to the use of restraints states in pertinent part as follows:

> The Dauphin County Prison Board, at its meeting held on June 26, 2013, reviewed your grievance appeal from Prison Board Chairman Jeffery (sic) T. Haste's denial of your complaint regarding an alleged denial of use of the restroom and improper use of restraints. . . .
> In its deliberations, the Prison Board reviewed

9

your concerns, as well as the pertinent records. In your underlying grievance and subsequent appeal to Commissioner Haste, you stated that the incident at issue occurred on 2/27/13.  In this appeal, you have revised the date and stated the incident in question occurred on 2/26/13.  A new investigation has been conducted and the video from that date and relevant times has been reviewed.  It has been concluded that your allegations regarding being handcuffed in the bullpen are verified.  However, at not time does it appear that you requested to use the restroom. Moreover, you are alone in the cell and therefore not in danger from any other inmates.  The officer involved felt that this action was necessary as a result of your unruly behavior while in the previous holding cell. That officer has stated that you were screaming and continued this behavior even after being ordered to stop.  Moreover, your records at this facility, and at others, indicate that you have a history of violent and combative behavior.

Id. at 15.  The response of the Prison Board to the grievance relating to the mattress restriction states in pertinent part as follows:

In your appeal you claim that your "mattress deprivation" cannot be justified.  You are not being deprived of a mattress.  Your are given a mattress for sleeping purposes between the hours of 9:00 p.m. and 8:00 a.m.  While you assert that you only destroyed the mattress in an effort to use it as a sleeping bag, the records reflect that you used the stuffing from the mattress to cover the windows on your cell door, thereby creating a security risk.[7]  As

─────────────

7.  A review of the record reveals that McClure has not

(continued...)

    such, there is a legitimate penological interest
    in restricting your access to a mattress.

Id. at 24.  The response further addresses an additional

claim of McClure regarding the use of restraints as

follows:

    You also claim that use of restraints
    constitutes a "wanton practice" and is
    "used to inflict pain or cause harm
    unnecessarily." It should be noted that you
    have complained of neck pain on one (1)
    occasion following the use of restraints.
    However, that complaint was resulting from the
    use of the restraint chair, and not the use of
    handcuffs and shackles as complained of in
    your appeal.  As further support of your
    proposition that you should not be restrained,
    you allege that there is no record of any
    violent behavior.  Your disciplinary file here,
    and at PA DOC, indicates otherwise.  During
    your most recent incarceration at this facility
    beginning on 12/26/12, it has been documented
    that you exhibited violent behavior on at least
    four (4) occasions.  Additionally, your records
    from DOC indicate that you assaulted an officer
    and made numerous threats to employees and/or
    inmates.  You also have been charged, and found
    guilty of, at least three (3) assaults while
    housed throughout the years.

---

7.  (...continued)
denied that he used the stuffing from the mattress to
cover the windows on his cell door.

Id.  As relief McClure requests an award of compensatory and punitive damages. Id., ¶¶64-68.

On February 3, 2015, the Court granted McClure's motion to proceed in forma pauperis and the Clerk of Court was appointed to serve a copy of the complaint on the defendants named therein. Doc. 10.  Waiver of service forms were sent to Defendants and on March 10, 2015, the named Defendants waived service. Doc. 14.  On April 6, 2015, Defendants filed a motion to dismiss the complaint. Doc. 16.  A brief in support of the motion was filed on April 20, 2015. Doc. 18.  After being granted an extension of time, McClure filed a brief in opposition on May 18, 2015. Doc. 23.  The motion to dismiss became ripe for disposition on June 4, 2015, when Defendants elected not to file a reply brief.

Defendants argue inter alia that McClure's complaint should be dismissed because he failed to allege more than a de minimis physical injury, there are insufficient allegations of deliberate indifference or denial of equal protection by Defendants, and the

allegations against the prison supervisory officials and the Dauphin County officials are insufficient to establish liability.  For the reasons set forth below, McClure's complaint will be dismissed with leave to file an amended complaint.

## Motion to Dismiss

Pro se parties are accorded substantial deference and liberality in federal court. Haines v. Kerner, 404 U.S. 519 (1972); Hughes v. Rowe, 449 U.S. 5 (1980).  They are not, however, free to ignore the Federal Rules of Civil Procedure.  Federal Rule of Civil Procedure 8 requires that a complaint contain a short and plain statement setting forth (1) the grounds upon which the court's jurisdiction rests, (2) the claim showing that the pleader is entitled to relief, and (3) a demand for judgment for the relief sought by the pleader.

Fed.R.Civ.P. 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted."  Under Rule 12(b)(6), we must

"accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir.2009) (quoting Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir.2008)). While a complaint need only contain "a short and plain statement of the claim," Fed.R.Civ.P. 8(a)(2), and detailed factual allegations are not required, Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Id. at 570, 550 U.S. 544, 127 S.Ct. 1955 at 1974, 167 L.Ed.2d 929. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal,___U.S.___, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting Twombly, 550 U.S. at 556, 127 S.Ct. at 1965.) "[L]abels and

14

conclusions" are not enough, <u>Twombly</u>, 550 U.S. at 555, 127 S.Ct. at 1964-65, and a court "'is not bound to accept as true a legal conclusion couched as a factual allegation.'" <u>Id</u>., 127 S.Ct. at 1965 (quoted case omitted).

In resolving the motion to dismiss, we thus "conduct a two-part analysis." <u>Fowler</u>, <u>supra</u>, 578 F.3d at 210. First, we separate the factual elements from the legal elements and disregard the legal conclusions. <u>Id</u>. at 210-11. Second, we "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "'plausible claim for relief.'" <u>Id</u>. at 211 (quoted case omitted).

In addition, because McClure complains about "prison conditions," the screening provisions, 28 U.S.C. § 1915(e), of the PLRA apply,[8] given that McClure

_____

8. Section 1915(e)(2), which was created by § 804(a)(5) of the PLRA, provides:

(2) Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at anytime if the
(continued...)

was granted <u>in</u> <u>forma</u> <u>pauperis</u> status to pursue this
suit.  The court's obligation to dismiss a complaint
under the PLRA screening provisions for complaints that
fail to state a claim is not excused even after
defendants have filed a motion to dismiss. <u>See</u>, <u>e.g.</u>,
<u>Lopez v. Smith</u>, 203 F.3d 1122, 1126 n. 6 (9th Cir.
2000). Hence, if there is a ground for dismissal which
was not relied upon by a defendant in a motion to
dismiss, the court may nonetheless *sua sponte* rest its
dismissal upon such ground pursuant to the screening
provisions of the PLRA. <u>See</u> <u>Lopez</u>; <u>Dare v. U.S.</u>, Civil
No. 06-115E, 2007 WL 1811198, at *4 (W.D.Pa. June 21,
2007), aff'd, 264 Fed. Appx. 183 (3d Cir.2008).

---

8.  (...continued)
    court determines that (A) the allegation of
    poverty is untrue; or (B) the action or appeal
    (i) is frivolous or malicious; (ii) fails to
    state a claim on which relief may be granted;
    or (iii) seeks monetary relief against a
    defendant who is immune from such relief.

## Discussion

McClure has raised claims under the Eighth and Fourteenth Amendment as well as state law.[9] Defendants have argued that McClure has failed to sufficiently alleged the personal involvement of several of the Defendants.  This argument has substantial merit.

A person seeking to recover damages under section 1983 must satisfy three requirements; he must: (1) assert that a constitutionally protected right has

---

9.  McClure appears to allege that his rights under state law were violated when he was deprived of a mattress. However, the Political Subdivision Tort Claims Act ("PSTCA") "provides absolute immunity to local agencies and its employees for official actions excluding eight statutorily defined exceptions." Spiker v. Whittaker, 553 Fed.Appx 275 n. 6 (3 Cir. 2014). None of those eight exceptions are applicable in this case: vehicle liability; care custody or control of personal property; real property; trees, traffic control and street lighting; utility services facilities; streets; sidewalks; and care, custody and control of animals. 42 Pa.C.S.A. § 8542. Furthermore, although the PTCSA does not grant immunity to employees of local agencies, such as a prison, for conduct which goes beyond negligence and constitutes "a crime, actual fraud, actual malice or wilful misconduct," 42 Pa.C.S.A. § 8550, the facts alleged in the complaint do not support an inference of such conduct. The state law claims will, therefore, be dismissed.

been violated; (2) state a cause of action sufficient to invoke the general federal question jurisdiction of the district court; and (3) demonstrate why money damages are the appropriate form of relief.  See Muhammad v. Carlson, 739 F.2d 122, 123-4 (3d Cir. 1984).

Moreover, in addressing whether a viable claim has been stated against a defendant the court must assess whether McClure has sufficiently alleged personal involvement of the defendant in the acts which he claims violated his rights.  Liability may not be imposed under section 1983 on the traditional standards of respondeat superior. Capone v. Marinelli, 868 F.2d 102, 106 (3d Cir. 1989)(citing Hampton v. Holmesburg Prison Officials, 546 F.2d 1017, 1082 (3d Cir. 1976)).  In Capone, the court noted "that supervisory personnel are only liable for the § 1983 violations of their subordinates if they knew of, participated in or acquiesced in such conduct." 868 F.2d at 106 n.7.

The only basis for liability against a local governmental body, such as a Prison Board, is an

18

allegation that an official policy or custom is responsible for a deprivation of rights protected by the Constitution.[10] <u>Monell v. Department of Social Services</u>, 436 U.S. 658 (1978); <u>see also</u> <u>Roman v. Jeffes</u>, 904 F.2d 192 (3d Cir. 1990).  In <u>Monell</u>, the Supreme Court added that liability may not be premised on a theory of <u>respondeat</u> <u>superior</u>, rather, only on a claim that the governmental unit itself supported the alleged constitutional violation.

With respect to Defendants Haste, DeRose, Nichols, Carroll, Stewart, Neidigh, Carnazzo and the Dauphin County Prison Board the court discerns no

---

10.  "Policy is made when a 'decisionmaker possess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict."  <u>Andrews v. City of Philadelphia</u>, 895 F.2d 1469, 1480 (3d Cir. 1990) (quoting <u>Pembaur v. City of Cincinnati</u>, 475 U.S. 469, 481, 106 S.Ct. 1292, 1299, 89 L.Ed.2d 452 (1986)).  Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law.  <u>Andrews</u>, 895 F.2d at 1480; <u>see also</u> <u>Fletcher v. O'Donnell</u>, 867 F.2d 791, 793-94 (3d Cir.), <u>cert.</u> <u>denied</u>, 492 U.S. 919 (1989) ("Custom may be established by proof of knowledge and acquiescence.").

allegations in the complaint that those Defendants were involved in any conduct which violated McClure's constitutional rights. The only involvement of those Defendants was with respect to the handling of McClure's grievances and appeals relating thereto.  Such involvement is insufficient as a matter of law to render those defendants liable. Rauso v. Vaughn, Civil No. 96-6977, 2000 WL 873285, at *16 (E.D.Pa., June 26, 2000)("[T]he failure of a prison official to act favorably on an inmate's grievance is not itself a constitutional violation."); see also Overholt v. Unibase Data Entry, Inc., 221 F.3d 1335 (Table), 2000 WL 799760, at *3 (6th Cir.2000) ("The defendants were not obligated to 'properly' respond to Overholt's grievances because there is no inherent constitutional right to an effective prison grievance procedure. Hence, his allegations that the defendants did not properly respond to his grievances simply do not rise to the level of a constitutional violation.") (citations omitted); Mitchell v. Keane, 974 F.Supp. 332, 343 (S.D.N.Y.1997)

("it appears from the submissions before the court that Mitchell filed grievances, had them referred to a prison official, and received a letter reporting that there was no evidence to substantiate his complaints. Mitchell's dissatisfaction with this response does not constitute a cause of action."); <u>Caldwell v. Beard</u>, Civil No. 2:07-CV-727, 2008 WL 2887810, at *4 (W.D.Pa. July 23, 2008) ("Such a premise for liability [i.e., for performing a role in the grievance process] fails as a matter of law."), aff'd,--- Fed.Appx. ----, 2009 WL 1111545 (3d Cir. April 27, 2009); <u>Caldwell v. Hall</u>, Civil No. 97-8069, 2000 WL 343229, at *2 (E.D.Pa. March 31, 2000) ("The failure of a prison official to act favorably on an inmate's grievance is not itself a constitutional violation."); <u>Orrs v. Comings</u>, Civil No. 92-6442, 1993 WL 418361, at *2 (E.D.Pa. Oct.13, 1993) ("But an allegation that a defendant failed to act on a grievance or complaint does not state a Section 1983 claim."); <u>Jefferson v. Wolfe</u>, Civil No. 04-44, 2006 WL 1947721, at *17 (W.D. Pa. July 11, 2006) ("These

allegations [of denying grievances or grievance appeals] are insufficient to establish such Defendants' personal involvement in the challenged conduct under Section 1983. <u>See</u> <u>Watkins v. Horn</u>, 1997 WL 566080 at * 4 (E.D.Pa..[sic] 1997) (concurrence in an administrative appeal process is not sufficient to establish personal involvement)").

Furthermore, other than vague, conclusory and speculative statements by McClure, there are no allegations in the complaint from which it could be concluded that Defendants Haste, DeRose, Nichols, Carroll, Stewart, Neidigh, Carnazzo and the Dauphin County Prison Board were responsible for a custom, policy or practice which violated McClure's rights. Consequently, the motion to dismiss as it relates to those Defendants will be granted.

As for Defendants Hostetter and Adams, the fundamental principles of Eighth Amendment[11] analysis

---

11.  The Eighth Amendment provides that "[e]xcessive bail shall not be required, nor excessive fines

(continued...)

reveal that "only 'the unnecessary and wanton infliction of pain' constitutes cruel and unusual punishment forbidden by [that Amendment]." Ingraham v. Wright, 430 U.S. 651, 670 (1977) (citations omitted). Accord Whitley v. Albers, 475 U.S. 312, 319 (1986). This Amendment must be interpreted in accordance with "the evolving standards of decency that mark the progress of a maturing society." Trop v. Dulles, 356 U.S. 86, 101 (1958). But a judge, when confronted with an Eighth Amendment claim, may not impose upon a prison his or her "notions of enlightened policy." Hassine v. Jeffes, 846 F.2d 169, 175 (3d Cir. 1988).

The right to be free from cruel and unusual punishment while incarcerated has both objective and subjective components. Wilson v. Seiter, 501 U.S. 294, 298 (1991). The objective component, i.e., whether the wrongdoing is harmful enough to establish a constitutional violation, is both "contextual and

---

11. (...continued)
imposed, nor cruel and unusual punishments inflicted."

responsive to 'contemporary standards of decency.'"
Hudson v. McMillian, 503 U.S. 1, 8 (1992)(quoting
Estelle v. Gamble, 429 U.S. 97, 103 (1976)).  In the
context of the prison environment, "extreme deprivations
are required to make out a conditions-of-confinement
claim." Id. at 9.  Part of the penalty facing those who
violate the norms of society is routine discomfort.
Id.; Rhodes v. Chapman, 452 U.S. 337, 346 (1981).  The
Eighth Amendment does not require that inmates be
provided with comfortable prisons.  Rhodes, 452 U.S. at
349; Loe v. Wilkinson, 604 F. Supp. 130, 133-34 (M.D.
Pa. 1984).  To determine whether conditions of
confinement are in violation of the Eighth Amendment, a
court must look at the totality of the circumstances.
Tillery v. Owens, 907 F.2d 418, 426 (3d Cir. 1990).  The
United States Supreme Court in Wilson held that

> [s]ome conditions of confinement may establish
> an Eighth Amendment violation "in combination"
> when each would not do so alone, but only when
> they have a mutually enforcing effect that
> produces the deprivation of a single,
> identifiable human need such as food, warmth, or
> exercise -- for example, a low cell temperature

24

at night combined with a failure to issue
blankets.  To say that some prison conditions
may interact in this fashion is a far cry from
saying that all prison conditions are a seamless
web for Eighth Amendment purposes. Nothing so
amorphous as "overall conditions" can rise to
the level of cruel and unusual punishment when
no specific deprivation of a single human
need exists.

501 U.S. at 304-305 (citations omitted).

The subjective component is met if the person or persons causing the deprivation acted with "a sufficiently culpable state of mind". Wilson, 501 U.S. at 298.  The legal malice required to satisfy the subjective component of an Eighth Amendment claim is not present unless the defendant's conduct involved unnecessary and wanton infliction of pain.  Id.; Ingraham, 430 U.S. at 670;  Gregg v. Georgia, 428 U.S. 153, 173 (1976).  Wantonness "does not have a fixed meaning but must be determined with 'due regard for differences in the kind of conduct against which an Eighth Amendment objection is lodged.'" Wilson, 501 U.S. at 302 (quoting Whitley, 475 U.S. at 320).  In the final analysis the Court concluded that an inmate must

demonstrate that a prison official was deliberately
indifferent  to the conditions of his or her
confinement.  Id. at 303.  Over 10 years ago, in Farmer
v. Brennan, 511 U.S 825, 114 S.Ct. 1970 (1994), the
Court described the standard for determining deliberate
indifference as follows:

> [A] prison official cannot be found liable under
> the Eighth Amendment for denying an inmate
> humane conditions of confinement unless the
> official knows of and disregards an excessive
> risk to inmate health or safety; the official
> must be aware of facts from which the inference
> could be drawn that a substantial risk of
> serious harm exists, and he must also draw
> the inference.

Id. at 837.  The Court added that "it is enough that the
official acted or failed to act despite his knowledge of
a substantial risk of harm." Id. at 842.

Under the above standards the allegations
against Defendant Adams for leaving McClure handcuffed
in a cell for over 2 hours are insufficient to state an
Eighth Amendment claim. See, e.g., Jones v. Marshall,
2010 WL 234990, at *3 (S.D.N.Y. Jan. 19, 2010)(denial of
right to use restroom for 90 minutes did not establish

the objective prong of an Eighth Amendment violation);
Bourdon v. Roney, 2003 WL 21058177, at *11 (N.D.N.Y.
Mar. 6, 2003)(three hour deprivation of restroom
privileges did not deprive inmate of his Eighth
Amendment rights). Likewise, the claims against
Defendant Hostetter are insufficient. McClure alleges
that he was subjected to certain conditions, including a
mattress restriction, from February 10 through 16, March
10 through 18, April 19 through May 2 and on July 10,
2013.  This amounts to a total of 30 days.  McClure has
failed to allege the "extreme deprivations" which give
rise to Eighth Amendment liability.[12]  See, e.g., Muniz
v. Hill, 2008 WL 1995457, at *5 (D.Or. May 6,
2008)(prisoner compelled to sleep on rubber security mat

---

12.  To state an Eighth Amendment claim,  a prisoner is
required to allege facts from which it could be
concluded that the prisoner suffered a serious or
significant physical injury or emotional injury
resulting from the challenged condition and that a
substantial risk of serious harm resulted from the
prisoner's exposure to the challenged condition. Rish
v. Johnson, 131 F.3d 1092, 1096 (4th Cir. 1997).

instead of mattress for thirty days did not implicate Eighth Amendment).

McClure next alleges that he was denied his right to equal protection under the Fourteenth Amendment because other inmates who destroyed property did not receive a mattress restriction. The Court of Appeals for the Third Circuit has routinely recognized that a plaintiff in order to establish a viable equal protection violation must show an intentional or purposeful discrimination. Wilson v. Schillinger, 761 F.2d 921, 929 (3d Cir. 1985), cert denied, 475 U.S. 1096 (1986). The Fourteenth Amendment of the Constitution provides in pertinent part: "No State shall . . . deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." The Court of Appeals for the Third Circuit has observed that the equal protection clause "is not a command that all persons be treated alike but, rather, 'a direction that all persons similarly situated should

be treated alike.'" <u>Artway v. Attorney General</u>, 81 F.3d 1235, 1267 (3d Cir. 1996)(quoting <u>City of Cleburne v. Cleburne Living Center</u>, 473 U.S. 432, 439 (1985)); <u>see also Kuhar v. Greensburg-Salem Sch. Dist.</u>, 616 F.2d 676, 677 n.1 (3d Cir. 1980)("An equal protection claim arises when an individual contends that he or she is receiving different treatment from that received by other individuals similarly situated.").

It is well-settled that a litigant in order to establish a viable equal protection violation must show an intentional or purposeful discrimination. <u>Snowden v. Hughes</u>, 321 U.S. 1, 8 (1944); <u>Wilson v. Schillinger</u>, 761 F.2d 921, 929 (3d Cir. 1985), <u>cert denied</u>, 475 U.S. 1096 (1986); <u>E & T Realty v. Strickland</u>, 830 F.2d 1107, 1113-14 (11th Cir. 1987), <u>cert. denied</u>, 485 U.S. 961 (1988). This "state of mind" requirement applies equally to claims involving (1) discrimination on the basis of race, religion, gender, alienage or national origin, (2) the violation of fundamental rights and (3) classifications based on social or economic factors.

29

See, e.g., Britton v. City of Erie, 933 F. Supp. 1261, 1266 (W.D. Pa. 1995), aff'd, 100 F.3d 946 (3d Cir. 1996); Adams v. McAllister, 798 F. Supp. 242, 245 (M.D. Pa.), aff'd, 972 F2d 1330 (3d Cir. 1992).[13]

McClure has failed to allege facts from which it can be concluded that Defendants engaged in intentional or purposeful discrimination or that he was treated differently than similarly situated individuals on the basis of his race or some other impermissible reason. Consequently, his equal protection claim will be dismissed.

Finally, McClure contends that his right to due process under the Fourteenth Amendment was denied. This allegation by McClure is completely conclusory without any supporting factual allegations. The court assumes that McClure is suggesting that he was denied due process in the context of a prison disciplinary

---

13. However, when a statute, rule or regulation "discriminates on its face," there is no need to present any further evidence of intent. See E & T Realty, 830 F.2d at 1112 n.5.

proceeding or with respect to confinement in administrative segregation.  It appears that McClure was a pretrial detainee as well as parole violator.  The standards are different with respect to an individual serving a sentence and one who is pending trial. See Bistrian v. Levi, 696 F.3d 352, 372-374 (3d Cir. 2012).

The court will first assume that McClure was a pretrial detainee. "[P]retrial detainees have 'federally protected liberty interests that are different in kind from those of sentenced inmates.'" Id. at 372.  The standard which applies is set forth in Bell v. Wolfish, 441 U.S. 520, 535 (1979).  The Supreme Court in that case made it clear that a pretrial detainee may not be punished prior to an adjudication of guilt in accordance with due process of law. Id.  However, the key was whether the detention or segregation was punishment or a condition "reasonably related to a penal institutions interest in maintaining jail security" which "typically pass[es] constitutional muster." Bistrian, 696 F.3d at 373; see also Stevenson v. Carroll, 495 F.3d 62, 68 (3d

Cir. 2007)(quoting <u>Rapier v. Harris</u>, 172 F.3d 999, 1005
(7th Cir. 1999)(a given restriction imposed on an inmate
"amounts to punishment when there is a showing of
express intent to punish on the part of the detention
facility officials, when the restriction or condition is
not rationally related to a legitimate non-punitive
government purpose, or when the restriction is excessive
in light of that purpose.").  The allegations in the
complaint and the attachments thereto point to security
concerns in imposing segregated confinement on McClure.
Consequently, under the circumstances, the complaint
fails to state a due process claim upon which relief can
granted.

Likewise, if McClure was serving a sentence as
the result of a parole violation, McClure has not stated
a viable due process claim in light of <u>Sandin v. Conner</u>,
515 U.S. 472, 115 S.Ct. 2293 (1995).

Liberty interests protected by the Fourteenth
Amendment may arise either from the Due Process Clause
itself or from state law.  <u>Meachum v. Fano</u>, 427 U.S.

32

215, 223-26 (1976).  In <u>Wolff v. McDonnell</u>, 418 U.S. 539, 563-573 (1974), where the plaintiffs were deprived of good time credits as a severe sanction for serious misconduct, the Supreme Court held that such inmates have various procedural due process protections in a prison disciplinary proceeding, including the right to call witnesses and to appear before an impartial decision-maker.[14]

---

14.  In <u>Wolff</u>, the Supreme Court recognized that "prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." <u>Id</u>. at 556.  Nonetheless, the Supreme Court held that a prisoner facing serious institutional sanctions is entitled to some procedural protection before penalties can be imposed.  <u>Id</u>. at 563-71.  The Supreme Court set forth five requirements of due process in a prison disciplinary proceeding: (1) the right to appear before an impartial decision-making body; (2) twenty-four hour advance written notice of the charges; (3) an opportunity to call witnesses and present documentary evidence, provided the presentation of such does not threaten institutional safety or correctional goals; (4) assistance from an inmate representative, if the charged inmate is illiterate or if complex issues are involved; (5) a written decision by the fact finders as to the evidence relied upon and the rationale behind their disciplinary action.  <u>Id.</u>

(continued...)

Thereafter, the Court in <u>Hewitt v. Helms</u>, 459 U.S. 460, 471 (1983), stated that a state law which "used language of an unmistakably mandatory character" creates a protected liberty interest.  Following <u>Hewitt</u> many courts held that a state regulation can create a due process interest -- such as freedom from punitive segregation -- if the rule contains mandatory language such as "shall" or "will."  <u>E.g.</u>, <u>Layton v. Beyer</u>, 953 F.2d 839, 848-49 (3d Cir. 1992).  Our Court of Appeals, this court, and other courts applied the <u>Wolff</u> principles to prison disciplinary hearings which did not result in withdrawal of good time credit but instead in disciplinary or administrative segregation.  <u>E.g.</u>, <u>Grillo v. Coughlin</u>, 31 F.3d 53 (2d Cir. 1994); <u>Griffin v. Spratt</u>, 969 F.2d 16 (3d Cir. 1992); <u>Cook v. Lehman</u>, 863 F. Supp. 207 (E.D. Pa. 1994); <u>Edwards v. White</u>, 501

---

(...continued)
     An additional procedural requirement was set forth in <u>Superintendent, Massachusetts Correctional Institution at Walpole v. Hill</u>, 472 U.S. 445, 453-456 (1985).  In that case, the Court held that there must be some evidence which supports the conclusion of the disciplinary tribunal.

F. Supp. 8 (M.D. Pa. 1979), aff'd, 633 F.2d 209 (3d Cir. 1980).[15]

The Supreme Court's decision in Sandin, however, marked a shift in the focus of liberty interest analysis from one "based on the language of a particular regulation" to "the nature of the deprivation" experienced by the prisoner. Id. at 2299. In Sandin the Court was presented with the procedural due process claims of a state prisoner who had been found guilty of misconduct and sentenced to 30 days in disciplinary segregation. Id. at 2296-97. The Court first found that the approach adopted in Hewitt -- described above -- was unwise and flawed. Id. at 2298-2300. The Court also rejected plaintiff Conner's argument that "any state action taken for punitive reasons encroaches upon a liberty interest under the Due Process Clause even in the absence of any state regulation." Id. at 2300. The Court reasoned, inter alia, that "[d]iscipline by prison

_____

15. Even if Wolff was applicable in this case, McClure has not alleged how any Defendant failed to comply with Wolff.

officials in response to a wide range of misconduct" is
expected as part of an inmate's sentence.  Id. at 2301.
The nature of plaintiff Conner's confinement in
disciplinary segregation was found similar to that of
inmates in administrative segregation and protective
custody at his prison.  Id.

Focusing on the nature of the punishment instead
of on the words of any regulation, the Court held that
the procedural protections in Wolff were inapplicable
because the "discipline in segregated confinement did
not present the type of atypical, significant
deprivation in which a state might conceivably create a
liberty interest."  115 S.Ct. at 2301.  The Court
examined the nature of Conner's disciplinary segregation
and found that "[b]ased on a comparison between inmates
inside and outside disciplinary segregation, the State's
actions in placing him there for 30 days did not work a
major disruption in his environment."  Id.  In the final
holding of the opinion, the Court stated "that neither
the Hawaii prison regulation in question, nor the Due

<u>Process</u> <u>Clause</u> <u>itself</u>, afforded Conner a protected liberty interest that would entitle him to the procedural protections set forth in <u>Wolff</u>." <u>Id.</u> (emphasis added).

In light of <u>Sandin</u>, prison disciplinary segregation will violate the protected liberty interest of the Fourteenth Amendment only if it dramatically departs, in length of time or otherwise, from basic prison conditions and imposes atypical, significant hardship on the inmate.

This court and others within this circuit, applying <u>Sandin</u> in various actions, have found no merit in the procedural due process claims presented. <u>See</u> Diaz v. Canino, 502 Fed. Appx. 214, 218-219 (3d Cir. 2012)(360 days in disciplinary segregation did not deprive inmate of protected liberty interest); <u>Smith v. Messinger</u>, 293 F.3d 641, 653 (3d Cir. 2002)(seven months in disciplinary segregation is insufficient to trigger a due process violation); <u>Griffin v. Vaughn</u>, 112 F.3d 703, 706-708 (3d Cir. 1997)(no liberty interest avoiding

fifteen (15) month placement in administrative custody because said confinement was not atypical); <u>Young v. Beard</u>, 227 Fed. Appx. 138 (3d Cir. 2007)(aggregate 980 days in disciplinary segregation did not violate the due process clause).

The complaint and attachments thereto reveal that McClure was confined at Dauphin County Prison from December 26, 2012, to sometime in September, 2013, a period of no more than 10 months. Assuming that McClure was confined is disciplinary segregation for the entire 10 months,[16] under <u>Sandin</u> and its progeny such confinement does not amount to an atypical significant hardship giving rise to a due process violation.

Under even the most liberal construction, McClure's complaint fails to state a claim upon which relief can be granted and is in violation of Rule 8. Accordingly, the complaint is subject to dismissal by the court. Such dismissal will be ordered with leave to

---

16. McClure does not specify the total period of time he spent in segregated confinement.

file an amended complaint. <u>See</u> <u>Ala' Ad-Din Bey v. U.S.</u>
<u>Department of Justice</u>, 457 Fed.Appx. 90, 91 (3d Cir.
2012)(quoting <u>Salahudin v. Cuomo</u>, 861 F.2d 40 (2d Cir.
1988)).

Although the complaint as filed fails to state a
cause of action against any of the named defendants, it
is possible that the deficiencies may be remedies by
amendment.  Consequently, McClure will be granted such
opportunity.  McClure is also advised that the amended
complaint must be complete in all respects.  It must be
a new pleading which stands by itself without reference
to the complaint already filed.  Such amended complaint
should set forth his claims in short, concise and plain
statements.  It should specify which actions are alleged
as to which defendants.  If McClure fails to file an
amended complaint adhering to the standards set forth
above, this case will be closed.

An appropriate order will be entered.


                      <u>     s/Sylvia H. Rambo     </u>
                        SYLVIA H. RAMBO
                        United States District Judge

Dated:  February 19, 2016.