# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

TABU N. MCCLURE,
    Plaintiff

    v.

COMMISSIONER JEFFREY
T. HASTE, *et al.*,
    Defendants

:     **No. 1:14-cv-2249**

:     **(Judge Rambo)**

## MEMORANDUM

## I.    BACKGROUND

*Pro se* Plaintiff Tabu N. McClure ("McClure"), who is currently incarcerated at the State Correctional Institution in Somerset, Pennsylvania ("SCI Somerset"), initiated this civil action by filing a complaint pursuant to 42 U.S.C. § 1983 on November 25, 2014.  (Doc. No. 1.)  In his complaint, McClure raised various claims relating to the conditions of confinement he experienced while incarcerated at the Dauphin County Prison ("DCP") in 2013.  (*Id.*)  McClure named as Defendants Commissioner Jeffrey T. Haste, Warden Dominic DeRose, Deputy Warden Nichols, Deputy Warden D.W. Carroll, Major Stewart, Captain Nidiegh, Lieutenant Carnazzo, Lieutenant Hostetter, and Sergeant R. Adams.  (*Id.*)  He also named the Board of Dauphin County Prison and an "unknown number of John Does."  (*Id.*)

By Order entered on February 3, 2015, the Court directed service of McClure's complaint on the Defendants.  (Doc. No. 10.)  On April 6, 2015, Defendants Adams,

Board of Dauphin County Prison, Carroll, DeRose, Haste, Hostetter, Nichols, and Nidiegh filed a motion to dismiss. (Doc. No. 16.) By Memorandum and Order entered on February 19, 2016, the Court granted the motion to dismiss and directed McClure to file an amended complaint within forty-five (45) days. (Doc. Nos. 27, 28.)

McClure filed his amended complaint on March 30, 2016, again naming Haste, Carroll, Hostetter, Adams, and the Dauphin County Prison Board as the Defendants. (Doc. No. 29.) In his amended complaint, McClure alleged that on February 8, 2013, he received a misconduct "and was placed in the hole . . . without sheets, a blanket, [and] toilet paper." (*Id.* at 3.) The cell was "very cold," so McClure decided to "rip[] the stuffing from inside of [his] mattress and crawled inside to stay warm." (*Id.*) Subsequently, Officer Battaglia issued McClure a misconduct for destruction of property, "claiming [that McClure] used the internal stuffing to cover [his] cell window." (*Id.*)

McClure's mattress was removed the next morning. (*Id.*) After a disciplinary hearing, McClure was assessed $42.00 for the mattress and also received thirty (30) days of disciplinary custody. (*Id.*) His mattress was not returned. (*Id.*) McClure asked about the mattress and was told that Lieutenant Hostetter had "issued an order directly from Deputy Warden Carroll to take [McClure's] mattress every day, and also that [he] be given the same damaged mattress." (*Id.*) McClure alleges that for the "next several

2

months," he "was forced to use this defective shell of a mattress, which was taken from [him] every day from 8:00 a.m.-9:00 p.m. for seven months straight." (*Id.* at 4.) He contends that these conditions caused his pre-existing back condition to become worse. (*Id.*) McClure "signed up for medical on several occasions," but "[e]ach time [he] was only given Motrin for 5 to 7 days to deal with the pain." (*Id.*)

McClure alleged that he subsequently became aware that "it was the custom or practice at D.C.P. to selectively deprive inmates of their mattresses, as other inmates had been subjected to this treatment, albeit for a shorter period duration of time than [he] was subjected to endure." (*Id.* at 5.) On February 23, 2013, McClure submitted a grievance to Warden DeRose. (*Id.*) He received a response back from Lieutenant Carnazzo on behalf of Warden DeRose, finding the grievance to be meritless. (*Id.*) McClure also asked Lieutenant Hostetter and Deputy Warden Carroll about the mattress restriction on several occasions. (*Id.* at 6.) He also appealed the grievance response to Commissioner Haste, who upheld the response, citing McClure's "persistent destruction of mattresses." (*Id.*) McClure appealed to the full prison board and the Dauphin County solicitor and received no relief. (*Id.* at 6-7.)

McClure also alleged that on several occasions, while in segregation, he was forced to go to the shower and recreation while handcuffed and shackled, and that the restraints were not removed. (*Id.* at 7.) He was also placed in restraints for a visit with

a public defender on February 26, 2013.  (*Id.*)  McClure was placed in a holding pen for over two hours, during which he was unable to use the bathroom because of the restraints.  (*Id.* at 7-8.)  He grieved this incident as well.  (*Id.* at 8.)

Based on these events, McClure alleged violations of his Fourteenth Amendment Due Process rights.  As relief, he sought compensatory, punitive, and nominal damages.  (*Id.* at 12.)  By Order entered on April 4, 2016, the Court dismissed McClure's claims against Haste, Adams, the Dauphin County Prison Board, and the John Doe Defendants without further leave to amend.  (Doc. No. 30.)  Accordingly, this action is proceeding on McClure's claims against Defendants Carroll and Hostetter regarding the mattress restriction.

On May 4, 2016, Defendants Carroll and Hostetter filed a motion to dismiss. (Doc. No. 31.)  By Memorandum and Order entered on February 8, 2017, the Court denied the motion to dismiss, directed Defendants Carroll and Hostetter to file an answer within thirty (30) days, directed that discovery be completed within 120 days, and directed that any further dispositive motions be filed within thirty (30) days of the close of discovery.  (Doc. No. 45.)  Defendants Carroll and Hostetter filed an answer to the amended complaint on March 10, 2017.  (Doc. No. 47.)

After engaging in discovery, Defendants Carroll and Hostetter filed a motion for summary judgment (Doc. No. 88), statement of facts (Doc. No. 89), and brief in

support (Doc. No. 90) on December 13, 2018.  After receiving an extension of time, McClure filed a declaration in opposition (Doc. No. 93), a brief in opposition (Doc. No. 94), and a statement of disputed material facts (Doc. No. 95) on February 4, 2019. After receiving an extension of time, Defendants Carroll and Hostetter filed a reply brief on March 20, 2019.  (Doc. No. 98.)  The motion for summary judgment is therefore ripe for resolution.

## II.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) requires the court to render summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law.  *Anderson*, 477 U.S. at 248; *Gray v. York Newspapers, Inc.*, 957 F.2d 1070, 1078 (3d Cir. 1992).  An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  *Anderson*, 477 U.S. at 257; *Brenner v.*

*Local 514, United Bhd. of Carpenters and Joiners of Am.*, 927 F.2d 1283, 1287-88 (3d Cir. 1991).

When determining whether there is a genuine issue of material fact, the court must view the facts and all reasonable inferences in favor of the nonmoving party. *Moore v. Tartler*, 986 F.2d 682 (3d Cir. 1993); *Clement v. Consol. Rail Corp.*, 963 F.2d 599, 600 (3d Cir. 1992); *White v. Westinghouse Electric Co.*, 862 F.2d 56, 59 (3d Cir. 1988). In order to avoid summary judgment, however, the nonmoving party may not rest on the unsubstantiated allegations of his or her pleadings. When the party seeking summary judgment satisfies its burden under Rule 56 of identifying evidence which demonstrates the absence of a genuine issue of material fact, the nonmoving party is required by Rule 56 to go beyond his pleadings with affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). The party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986). When Rule 56 shifts the burden of production to the nonmoving party, that party must produce evidence to show the existence of every element essential to its case which it bears the burden of proving at trial, for "a complete failure of proof concerning an essential element

of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. *See Harter v. G.A.F. Corp.*, 967 F.2d 846, 851 (3d Cir. 1992).

In determining whether an issue of material fact exists, the court must consider the evidence in the light most favorable to the nonmoving party. *White*, 826 F.2d at 59. In doing so, the Court must accept the nonmovant's allegations as true and resolve any conflicts in his favor. *Id.* (citations omitted). However, a party opposing a summary judgment motion must comply with Local Rule 56.1, which specifically directs the oppositional party to submit a "statement of the material facts, responding to the numbered paragraphs set forth in the statement required [to be filed by the movant], as to which it is contended that there exists a genuine issue to be tried"; if the nonmovant fails to do so, "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted." L.R. 56.1. A party cannot evade these litigation responsibilities in this regard simply by citing the fact that he is a *pro se* litigant. These rules apply with equal force to all parties. *See Sanders v. Beard*, No. 09-CV-1384, 2010 U.S. Dist. LEXIS, *15 (M.D. Pa. July 20, 2010) (*pro se* parties "are not excused from complying with court orders and the local rules of court"); *Thomas v. Norris*, No. 02-CV-01854, 2006 U.S.

Dist. LEXIS 64347, *11 (M.D. Pa. Sept. 8, 2006) (*pro se* parties must follow the Federal Rules of Civil Procedure).

## III.   STATEMENT OF MATERIAL FACTS[1]

### A.   Facts Concerning McClure's Relevant Criminal History

On January 9, 2010, the Pennsylvania Board of Probation and Parole ("PBPP") entered an order releasing McClure on parole with respect to his 2006 Dauphin County conviction and sentence for a prohibited firearms charge. (Doc. No. 89 ¶ 2.) On October 27, 2010, the PBPP entered an administrative action declaring that McClure was delinquent in terms of his parole conditions. (*Id.* ¶ 3.)

---

[1] As noted *supra*, this Court's Local Rules provide that in addition to filing a brief in opposition to the moving party's brief in support of its motion, "[t]he papers opposing a motion for summary judgment shall include a separate, short and concise statement of material facts responding to the numbered paragraphs set forth in the statement [of material facts filed by the moving party] . . . as to which it is contended that there exists a genuine issue to be tried." M.D. Pa. L.R. 56. 1. The Rule further requires the inclusion of references to the parts of the record that support the statements. *Id.* Finally, the Rule states that the statement of material facts required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party. *See id.* Unless otherwise noted, the factual background herein is taken from Defendants' Rule 56.1 statement of material facts. (Doc. No. 89.)

McClure did not comply with M.D. Pa. L.R. 56.1 in that he failed to respond specifically to the numbered paragraphs in Defendants' statement of material facts. Rather, McClure filed his own statement of material facts without regard to that of Defendants. (Doc. No. 95.) The Court notes that McClure's verified amended complaint may be treated as an affidavit in opposition to the motion for summary judgment, *see Ziegler v. Eby*, 77 F. App'x 117, 120 (3d Cir. 2003); however, the allegations must be based on personal knowledge, and this Court is not "required to accept unsupported, self-serving testimony as evidence sufficient to create a jury question." *See Hammonds v. Collins*, Civ. No. 12-236, 2016 WL 1621986, at *3 (M.D. Pa. Apr. 20, 2016) (citing *Brooks v. Am. Broad. Co.*, 999 F.2d 167, 172 (6th Cir. 1993)). Accordingly, unless otherwise noted, the Court deems the facts set forth by Defendants to be undisputed. *See* M.D. Pa. L.R. 56. 1; Fed. R. Civ. P. 56(e)(2); *Bowman v. Mazur*, Civ. No. 08-173J, 2010 WL 2606291, at *3 (W.D. Pa. Oct. 30, 2010) ("Plaintiff's responsive statement of material facts is insufficient to create a genuine issue of material fact because it failed to comply with Local Rule 56.1.").

On December 22, 2011, McClure was arrested on charges of unlawful possession of a firearm, unlawful body armor, possession of a firearm without a license, simple assault, and false imprisonment. (*Id.* ¶ 4.) The events underlying these charges occurred while McClure was on parole. (*Id.*) That same day, McClure was committed to the Dauphin County Prison ("DCP"), where he was incarcerated until he was transferred to a state correctional institution on February 29, 2012. (*Id.* ¶ 5.)

On February 3, 2012, the PBPP entered a Notice of the Board Decision, stating that McClure should be recommitted to a state correctional institution for nine (9) months "due to his parole violations and for detainment in his upcoming criminal charges in Dauphin County." (*Id.* ¶ 6.) On December 26, 2012, McClure was transferred to DCP from SCI Pine Grove so that he could attend court proceedings for his pending criminal charges. (*Id.* ¶ 7.) McClure was therefore incarcerated at DCP from December 26, 2012 until September 3, 2013.[2] (*Id.* ¶ 8.)

On March 8, 2013, a jury found McClure guilty of unlawful possession of a firearm and unlawful body armor. (*Id.* ¶ 9.) On May 6, 2013, he was sentenced to

---

[2] Defendants contend that during this period, McClure was at all times a convicted inmate "as he was recommitted to a correctional institution due to his status as a parole violator and his previous parole was ultimately revoked because he received additional criminal convictions during his parole period." (Doc. No. 89 ¶ 10.) McClure, however, maintains that he was a pretrial detainee. (Doc. No. 20 ¶ 4; Doc. No. 95 ¶ 10.) The Court discusses this dispute *infra* in Part IV.B.1.

a minimum of five (5) and a maximum of ten (10) years of incarceration. (*Id.* ¶ 10.) The PBPP subsequently revoked his parole from his 2006 conviction. (*Id.* ¶ 11.)

## B. Facts Regarding the Mattress Restriction

On February 9, 2013, at approximately 1:00 a.m., while in segregation at DCP, McClure tore into his DCP-issued mattress, removed some of the stuffing, and crawled inside of it. (*Id.* ¶ 17.) A few hours later, a corrections officer noticed McClure, knocked on his cell door, and told him that he could not be inside the mattress. (*Id.* ¶ 19.) In response, McClure got up, went to the cell door, and stated that he would be staying inside the mattress until he got "a blanket or sheets or something to stay warm." (*Id.* ¶ 20.) The corrections officer wrote an incident report. (*Id.* ¶ 21.) Subsequently, the CERT team removed McClure from the cell and placed him in a restraint chair in a "strip cell." (*Id.*) At approximately 6:00 a.m., McClure was taken out of the restraint chair and given his mattress. (*Id.* ¶ 22.)

As a result, Defendant Hostetter issued a Report of Extraordinary Occurrence, stating that McClure had ripped the stuffing out of the mattress and used it to cover the window of his cell door.[3] (*Id.* ¶ 23.) He wrote that McClure had refused orders from C.O. Battaglia to remove the stuffing. (*Id.*) McClure was charged and pled guilty before the DCP Disciplinary Board to destroying county property, disruptive

---

[3] McClure maintains that he never used the stuffing from his mattress to cover his cell window. (Doc. No. 20 ¶ 15.)

behavior, and refusing an order. (*Id.* ¶ 25.) He was given thirty (30) days of lock-in and assessed $42.00 in restitution for the damaged mattress. (*Id.*)

On February 9, 2013, McClure was returned to cell P-3-2 in the segregation unit and was not given a mattress during the day. (*Id.* ¶ 26.) Sgt. Divolpi told McClure a few days later that he had been placed on a mattress restriction. (*Id.* ¶ 27.) As part of Defendant Hostetter's report concerning the incident, he issued a memorandum to DCP staff, per Defendant Carroll's order, that McClure "has been placed on a mattress restriction until further notice. The mattress is to be issued to him at 2100 hrs daily, and removed from his cell at 0800 hrs daily until further notice. He is to be issued the same mattress that he damaged."[4] (*Id.* ¶ 28.) McClure spoke to Defendant Hostetter about the mattress restriction on a few occasions but gathered that nothing could be done until Defendant Carroll decided otherwise. (*Id.* ¶ 30.) The mattress restriction remained in place from February 9, 2013 until September 3, 2013.[5] (*Id.* ¶ 31.)

---

[4] At times, McClure's mattress was taken away at 7:30 a.m. and sometimes returned at 10:00 p.m. (Doc. No. 89 ¶¶ 32-33.) Generally, however, McClure was provided a mattress "for around 11 hours per day, but no less than 9 ½ hours on days where it varied." (*Id.* ¶ 34.)

[5] McClure maintains that during this time, he began "to experience a substantial amount of pain in [his] lower back, along with tingling and numbness sensations in [his] legs, and sciatica." (Doc. No. 29 ¶ 24.) He "experienced stiffness in [his] back, reduced mobility, and a loss of meaningful and restful sleep." (*Id.* ¶ 25.) The mattress restriction exacerbated his pre-existing back problems. (*Id.* ¶ 24.) McClure signed up for medical on several occasions and maintains that he was only give Motrin for five (5) to seven (7) days each time. (*Id.* ¶ 26.)

The mattress restriction was justified as reasonable because McClure was not permitted to have a mattress in his cell while not sleeping. (*Id.* ¶ 32.) Moreover, McClure's aggression toward staff at DCP increased after being placed on the mattress restriction. (*Id.* ¶ 37.) McClure admits that his increased aggression could be attributed to the fact that he gave staff members problems when they came to take his mattress in the mornings. (*Id.* ¶ 38.)

McClure received subsequent disciplinary charges for covering his cell door window. (*Id.* ¶ 41.) For example, he pled guilty to charges issued on March 10, 2013 involving taking stuffing out of his mattress and placing a towel over his window. (*Id.* ¶¶ 41-42.) On June 14, 2013, McClure pled guilty to charges issued when he covered his window with cardboard and refused to take it down. (*Id.* ¶¶ 43-44.) That same day, he pled guilty to additional charges when he covered his window with paper and refused to take it down. (*Id.* ¶¶ 45-46.) McClure also received several charges regarding his behavior toward DCP staff members while the mattress restriction was in place. (*Id.* ¶¶ 47-56.) Several DCP staff members told McClure that if he stayed out of trouble, the mattress restriction may be lifted. (*Id.* ¶ 58.) However, "against the advice of DCP staff, [McClure] continued to

---

Defendants contend that McClure clarified that his back pain resulted from the use of the restraint chair. (Doc. No. 89 ¶ 91.) They also maintain that McClure did not suffer any back pain because, even though DCP provided him Motrin, this practice was ended when staff members discovered McClure was hoarding the medication instead of taking it. (*Id.* ¶ 92.)

engage in problematic behavior after the mattress restriction was imposed." (*Id.* ¶ 60.)

### C.    Facts Regarding Administrative Exhaustion

DCP's grievance policy provides that "[a]n inmate must write out the complete grievance being as brief but as specific as possible soon after the alleged occurrence." (*Id.* ¶ 72.)  A grievance must first be submitted to the Warden, Deputy Warden, or a Security Major.  (*Id.* ¶ 73.)  If the Warden denies a grievance, the inmate can appeal to the Chairman of the DCP Board of Inspectors.  (*Id.* ¶ 74.)  A further appeal can then be taken to the full Prison Board. (*Id.* ¶ 75.)  The final appeal level is taken to the Dauphin County Solicitor.  (*Id.* ¶ 76.)

On February 13, 2013, McClure used a request slip to submit a grievance regarding the mattress restriction.  (*Id.* ¶ 78.)  The grievance "did not address any sort of leg issues or lower back pain, nor [did] it identify either Lt. Hostetter or Deputy Warden Carroll as responsible for such restriction." (*Id.*)  In response, McClure received a memorandum from Lt. Carnazzo to Major Stewart finding the grievance to lack merit.  (*Id.* ¶¶ 79-80.)

McClure submitted an "appeal grievance" on a request slip on March 15, 2013, challenging the finding that his grievance regarding the mattress restriction lacked merit.  (*Id.* ¶ 81.)  The appeal "[did] not address any sort of leg tingling or

lower back pain, nor [did] it identify either Lt. Hostetter or Deputy Warden Carroll as responsible for the mattress restriction." (*Id.*) In response, McClure received a March 26, 2013 letter from Commissioner Haste, denying his grievance appeal. (*Id.* ¶ 82.) Commissioner Haste stated that the mattress restriction was justified because of McClure's persistent destruction of mattresses and because he used the destroyed mattress to cover the window in his cell door. (*Id.*)

On April 5, 2013, McClure used a request slip to submit an appeal to the full Prison Board. (*Id.* ¶ 83.) McClure addressed the mattress restriction but made no reference to any back pain or leg tingling. (*Id.*) He subsequently received a letter from the Prison Board solicitor denying his appeal. (*Id.* ¶ 85.) The Prison Board concluded that the mattress restriction was justified because McClure had used the stuffing to cover the window of his cell door. (*Id.*)

On April 29, 2013, McClure submitted an appeal to the Dauphin County Solicitor. (*Id.* ¶ 86.) This appeal was the first where McClure mentioned Defendants Hostetter and Carroll. (*Id.* ¶ 87.) It was also the first time McClure mentioned that he was suffering back pain and leg tingling in relation to the mattress restriction. (*Id.* ¶ 88.) He claimed to have started to experience those side effects in February of 2013. (*Id.*) On May 20, 2013, the Dauphin County Solicitor denied McClure's appeal. (*Id.* ¶ 89.)

## IV.   DISCUSSION

Defendants contend that they are entitled to summary judgment because: (1) McClure, as a convicted inmate, cannot maintain a Fourteenth Amendment due process claim regarding the mattress restriction; (2) even if McClure can maintain a due process claim, the imposition of the mattress restriction was justified; (3) there is no evidence that McClure suffered physical injury; (4) they are entitled to qualified immunity; and (5) McClure failed to exhaust his administrative remedies.  (Doc. No. 90.)  The Court first considers Defendants' argument that McClure failed to exhaust his administrative remedies.

### A.   Exhaustion of Administrative Remedies

Under the Prison Litigation Reform Act of 1996 ("PLRA"), a prisoner must pursue all available avenues for relief through the prison's grievance system before bringing a federal civil rights action.  *See* 42 U.S.C. § 1997e(a); *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001) ("[A]n inmate must exhaust irrespective of the forms of relief sought and offered through administrative avenues.").  Section 1997(e) provides, in relevant part "[n]o action shall be brought with respect to prison conditions under section 1983 of the Revised Statutes of the United States, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.  42 U.S.C.

§ 1997(e). The exhaustion requirement is mandatory. *Williams v. Beard*, 482 F.3d 637, 639 (3d Cir. 2007); *Booth*, 532 U.S. at 742 (holding that the exhaustion requirement of the PLRA applies to grievance procedures "regardless of the relief offered through administrative procedures").

The United States Court of Appeals for the Third Circuit has further provided that there is no futility exception to § 1997e's exhaustion requirement. *Nyhuis v. Reno*, 204 F.3d 65, 75-76 (3d Cir. 2000). Courts have typically required across-the-board administrative exhaustion by inmates who seek to pursue claims in federal court. *Id.* Additionally, courts have imposed a procedural default component on this exhaustion requirement, holding that inmates must fully satisfy the administrative requirements of the inmate grievance process before proceeding into federal court. *Spruill v. Gillis*, 372 F.3d 218 (3d Cir. 2004). Courts have concluded that inmates who fail to fully, or timely, complete the prison grievance process are barred from subsequently litigating claims in federal court. *See e.g., Booth v. Churner*, 206 F.3d 289 (3d Cir. 2000); *Bolla v. Strickland*, 304 F. App'x 22 (3d Cir. 2008).

This broad rule favoring full exhaustion allows for a narrowly defined exception. If the actions of prison officials directly caused the inmate's procedural default on a grievance, the inmate will not be held to strict compliance with this

exhaustion requirement.  *See Camp v. Brennan*, 219 F.3d 279 (3d Cir. 2000).  However, case law recognizes a clear "reluctance to invoke equitable reasons to excuse [an inmate's] failure to exhaust as the statute requires."  *Davis v. Warman*, 49 F. App'x 365, 368 (3d Cir. 2002).  Thus, an inmate's failure to exhaust will only be excused "under certain limited circumstances," *Harris v. Armstrong*, 149 F. App'x 58, 59 (3d Cir. 2005), and an inmate can defeat a claim of failure to exhaust only by showing "he was misled or that there was some extraordinary reason he was prevented from complying with the statutory mandate."  *Warman*, 49 F. App'x at 368.

In the absence of competent proof that an inmate was misled by corrections officials, or some other extraordinary circumstances, inmate requests to excuse a failure to exhaust are frequently rebuffed by the courts.  Thus, an inmate cannot excuse a failure to timely comply with these grievance procedures by simply claiming that his efforts constituted "substantial compliance" with this statutory exhaustion requirement.  *Harris v. Armstrong*, 149 F. App'x 58, 59 (3d Cir. 2005).  Nor can an inmate avoid this exhaustion requirement by merely alleging that the administrative policies were not clearly explained to him.  *Warman*, 49 F. App'x at 368. Thus, an inmate's confusion regarding these grievances procedures does not, standing alone, excuse a failure to exhaust.  *Casey v. Smith*, 71 F. App'x 916 (3d Cir.

2003); *see also Marsh v. Soares*, 223 F.3d 1217, 1220 (10th Cir. 2000) ("[I]t is well established that 'ignorance of the law, even for an incarcerated *pro se* petitioner, generally does not excuse prompt filing.'") (citations omitted).

Finally, failure to exhaust is an affirmative defense that must be pled by the defendant. *Jones v. Bock*, 549 U.S. 199, 216 (2007). "In a motion for summary judgment, where the movants have the burden of proof at trial, 'they [have] the burden of supporting their motion for summary judgment with credible evidence . . . that would entitle [them] to a directed verdict if not controverted at trial.'" *Foster v. Morris*, 208 F. App'x 174, 179 (3d Cir. 2006) (quoting *In re Bressman*, 327 F.3d 229, 237 (3d Cir. 2003) (internal quotations omitted)). If "the motion does not establish the absence of a genuine factual issue, the district court should deny summary judgment even if no opposing evidentiary matter is presented." *Id.* (quoting *Nat'l State Bank v. Fed. Reserve Bank of N.Y.*, 979 F.2d 1579, 1582 (3d Cir. 1992) (internal quotations omitted)).

Defendants argue that McClure failed to exhaust his administrative remedies because he "did not appeal a grievance concerning the imposition of the mattress restriction through the entirety of DCP's grievance appeal procedure." (Doc. No. 90 at 28.) They contend that McClure's original grievance did not concern the imposition of the mattress restriction itself. (*Id.*) Defendants further maintain that

McClure did not properly exhaust his remedies because his "grievance was not specific enough as to comply with DCP policy." (*Id.*) Specifically, Defendants argue that the grievance did not mention any issue with the imposition of the mattress restriction until late in the appeal process, that McClure did not name Defendants as the individuals responsible for the mattress restriction until later in the appeal process, and that McClure's original grievance never mentioned back pain or leg tingling. (*Id.*) McClure, however, maintains that he exhausted all remedies available to him. (Doc. No. 29 ¶ 55.)

Defendants have submitted a copy of DCP's grievance policy as well as copies of McClure's grievances in support of their motion for summary judgment. The DCP grievance policy provides that "[a]n inmate must write out the complete grievance, being as brief but specific as possible, soon after the alleged occurrence." (Doc. No. 89-52.) There is no specific form to use, and inmates may submit grievances on an inmate request slip. (*Id.*) The record reflects that on February 13, 2013, McClure used a request slip to submit a grievance addressed to the Warden as well as Defendant Carrol. (Doc. No. 89-53.) In his grievance, McClure wrote:

> This complaint is about the practice being used on me of depriving me of a mattress from 8:00 A.M.-9:00 p.m. for the last 6 days & subjecting me to wearing shackles & cuffs during rec & showers. These actions amount to cruel & unusual punishment & are a violation of my due process also serve no legitimate penological reason and are a form of punishment.

19

(*Id.*)  In response, McClure received a memorandum from Lt. Carnazzo to Major Stewart finding the grievance to lack merit.  (Doc. No. 89 ¶¶ 79-80.)  This memorandum noted that "[t]he conditions cited in this complaint have been authorized by D.W. Carroll."  (Doc. No. 89-54 at 3.)

McClure appealed on March 15, 2013, again using an inmate request form. (Doc. No. 89-54 at 4.)  Although he checked that his appeal was addressed to the Warden as well as Defendant Carroll and Deputy Warden Nichols, he also checked that his appeal was addressed to Chairman Haste.  (*Id.*)  McClure sought to appeal the decision regarding the deprivation of his mattress.  (*Id.*)  Haste denied the appeal on March 26, 2013.  (Doc. No. 89-55 at 23.)

McClure appealed to the full Prison Board on April 5, 2013, again using a request slip.  (Doc. No. 89-54 at 6.)  In this appeal, McClure mentioned that he had been experience back pain.  (*Id.*)  On April 17, 2013, the Prison Board Solicitor denied McClure's appeal.  (*Id.* at 8.)  Finally, McClure appealed to the Dauphin County Solicitor.  (*Id.* at 9-12.)  In this final appeal, McClure mentioned Defendants Hostetter and Carroll.  (*Id.* at 9.)  He also mentioned experiencing back pain and leg tingling.  (*Id.* at 10.)  The Dauphin County Solicitor denied McClure's appeal on May 20, 2013.  (*Id.* at 13-14.)

Defendants first argue that McClure did not file a grievance related to the imposition of the mattress restriction itself. (Doc. No. 90 at 27-28.) Upon review of the record, the Court cannot agree. As set forth above, McClure challenged the imposition of the daytime mattress restriction from initial grievance through his final appeal to the Dauphin County Solicitor.

Defendants also argue that McClure failed to properly exhaust his remedies because his grievances were not specific enough to comply with DCP policy. They fault McClure for not naming Defendants as the individuals responsible for imposing the mattress restriction until later in the grievance appeal process. (*Id.* at 28.) However, as the Third Circuit recently confirmed, the "primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued." *Travillion v. Wetzel*, No. 17-3248, --- F. App'x ----, 2019 WL 1514732, at *2 (3d Cir. Apr. 8, 2019) (per curiam) (quoting *Williams v. Beard*, 482 F.3d 637, 640 (3d Cir. 2007)). Here, the DCP grievance policy notes only that inmates must be "as brief but specific as possible" when submitting a grievance. (Doc. No. 89-52.) There is no explicit requirement that an inmate specifically name the individuals involved. Given this, the Court declines to conclude that McClure failed to properly exhaust his administrative remedies

because he did not specifically name Defendants Carroll and Hostetter in his submissions at all levels of the grievance process.

Defendants also fault McClure for not mentioning any issue with the imposition of the mattress restriction as well as his back pain and leg tingling until later in the grievance appeal process. (Doc. No. 90 at 28.) McClure's claim, however, is that the imposition of the restriction itself violates his constitutional rights. As noted above, McClure challenged the imposition itself throughout the grievance process. And, McClure maintains that when he submitted his initial grievance, he did not mention any back or leg pain because he was not yet experiencing those problems. (Doc. No. 95 ¶ 78.) Defendants provide no authority suggesting that McClure did not properly exhaust by failing to mention such issues allegedly resulting from the imposition of the mattress restriction until later in the appeal process. Given this, the Court declines to conclude that McClure failed to properly exhaust his remedies on this basis as well.

In sum, the record before the Court reflects that McClure grieved the imposition of the mattress restriction and challenged that restriction through DCP's grievance appeal process. While McClure's grievances may not have been as specific as Defendants may have wished them to be, the Court cannot agree that McClure failed to exhaust his remedies or did not properly exhaust them.

Accordingly, the Court declines to grant Defendants summary judgment on the basis that McClure failed to exhaust his remedies. The Court will therefore consider the merits of McClure's claim below.

## B.     Merits of McClure's Claim

### 1.     McClure's Status During the Relevant Time

McClure's remaining claim is that the imposition of the mattress restriction violated his due process rights under the Fourteenth Amendment. (*See* Doc. No. 29 ¶¶ 59-60.) Defendants assert that McClure's Fourteenth Amendment claim is barred because he "was a convicted and sentenced inmate and not a pretrial detainee" during the relevant time.[6] (Doc. No. 90 at 7.) McClure, however, maintains that he was a pretrial detainee. (Doc. No. 29 ¶ 11.)

"[P]retrial detainees have 'federally protected liberty interests that are different in kind from those of sentenced inmates.'" *Bistrian v. Levi*, 696 F.3d 352, 372 (3d Cir. 2012) (quoting *Cobb v. Aytch*, 643 F.3d 946, 962 (3d Cir. 1981) (en banc)). Thus, "under the Due Process Clause . . . a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law." *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). "A sentenced inmate, on the other hand, may be

---

[6] The question concerning McClure's status is only particularly relevant from December 26, 2012, when he was transferred to DCP (Doc. No. 89 ¶ 8), until March 8, 2013, when he was convicted of unlawful possession of a firearm and unlawful body armor (*id.* ¶ 9).

punished, although that punishment may not be 'cruel and unusual' under the Eighth Amendment." *Id.* at 535 n.16.

The undisputed facts before the Court establish that in 2010, the PBPP released McClure on parole with respect to a 2006 Dauphin County conviction. (Doc. No. 89 ¶ 2.) On October 27, 2010, the PBPP entered an administrative action declaring that McClure was delinquent in his parole conditions. (*Id.* ¶ 3.) On December 22, 2011, McClure was arrested on various charges, including unlawful possession of a firearm and unlawful body armor, for events that occurred while on parole. (*Id.* ¶ 4.) He was committed to the DCP and then transferred to a state correctional institution on February 29, 2012. (*Id.* ¶ 5.)

On February 3, 2012, the PBPP declared that McClure should be recommitted to a state correctional institution for nine (9) months "due to his parole violations and for detainment in his upcoming criminal charges in Dauphin County." (*Id.* ¶ 6.) McClure was transferred to DCP from SCI Pine Grove on December 26, 2012. (*Id.* ¶ 7.) On March 8, 2013, a jury found McClure guilty of unlawful possession of a firearm and unlawful body armor. (*Id.* ¶ 9.) On May 6, 2013, he was sentenced to a minimum of five (5) and a maximum of ten (10) years of incarceration. (*Id.* ¶ 10.)

McClure maintains that he was not a convicted and sentenced inmate during the relevant time. (Doc. No. 94 at 3.) He asserts that he made bond on the 2011

Dauphin County charges and was therefore held on the PBPP detainer. (*Id.*) McClure argues that he did not waive his right to a parole revocation hearing until May 13, 2013, and that the PBPP revoked his parole on June 4, 2013. (*Id.*)

While the PBPP may not have officially revoked McClure's parole until June 4, 2013, McClure ignores the fact that the PBPP, on February 3, 2012, ordered him to be recommitted to a state correctional institution. (Doc. No. 89 ¶ 6.) During his commitment, McClure was "completely dependent on [his place of incarceration] for all of his basic needs." *Giddings v. Joseph Coleman Ctr.*, 473 F. Supp. 2d 617, 623 (E.D. Pa. 2007); *see also Ogden v. Mifflin Cty.*, No. 1:06-CV-2299, 2008 WL 4601931, at *3 n.4 (M.D. Pa. Oct. 15, 2008) (citing *Giddings* to conclude that the Eighth Amendment, not the Fourteenth Amendment, governed a failure-to-protect claim brought by a parolee who had been arrested and detained on a DUI charge). Thus, McClure's status during the relevant time "was akin to that of a convicted person punished by incarceration." *Giddings*, 473 F. Supp. 2d at 623; *see also Morrissey v. Brewer*, 408 U.S. 471, 477 (1972) (holding that "parole is an established variation on imprisonment of convicted criminals"). Accordingly, while Defendants are correct that McClure cannot maintain a Fourteenth Amendment

claim given his status at the relevant time, the Court will consider McClure's claim regarding the mattress restriction under the Eighth Amendment.[7]

## 2. Eighth Amendment Analysis

The Eighth Amendment's prohibition of cruel and unusual punishment imposes duties on prison officials to provide prisoners with the basic necessities of life, such as food, clothing, shelter, sanitation, medical care, and personal safety. *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994); *Helling v. McKinney*, 509 U.S. 25, 31 (1993). It is well settled that prison conditions constitute cruel and unusual punishment if they result in serious deprivations of basic human needs. *See Tillman v. Lebanon Cty. Corr.Facility*, 221 F.3d 410 (3d Cir. 2000). A condition of confinement implicates the Eighth Amendment if it is so reprehensible as to be deemed inhumane under contemporary standards or deprives an inmate of minimal civilized measures of the necessities of life. *See Hudson v. McMillian*, 503 U.S. 1, 8 (1992); *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). However, the Eighth Amendment does not mandate that prisons be free of discomfort. *Farmer*, 511 U.S. at 33 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981)).

---

[7] Defendants have included an Eighth Amendment analysis as part of their argument that they are entitled to qualified immunity, and McClure has responded to this argument in his brief in opposition.

Under *Farmer*, an inmate must surmount the high hurdle of showing that a prison official actually knew or was aware of a substantial risk to inmate safety and deliberately disregarded that risk. *Beers-Capitol v. Whetzel*, 256 F.3d 120, 125 (3d Cir. 2001). This requirement of actual knowledge means that "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

The length of the inmate's exposure to the alleged unconstitutional conditions and the totality of the circumstances must be considered when making a determination as to whether a condition amounts to cruel and unusual punishment. A prisoner must also establish a specific deprivation of a single, identifiable necessity. *Wilson*, 501 U.S. at 304-05. In addition, the inmate must demonstrate that the prison official responsible for the conditions of confinement acted with "a sufficiently culpable state of mind." *Id*. at 298.

The record before the Court establishes that McClure was subject to the mattress restriction from February 9, 2013 until September 3, 2013. (Doc. No. 89 ¶ 9.) Per Defendant Carroll's order, McClure's mattress was to "be issued to him at 2100 hrs daily, and removed from his cell at 0800 hrs daily until further notice." (Doc. No. 89 ¶ 28.) He was to still receive the same mattress he damaged. (*Id.*)

Generally, McClure received "a mattress for around 11 hours per day, but no less than 9 ½ hours on days where it varied." (*Id.* ¶ 34.)

The Third Circuit has concluded that an inmate is not subject to cruel and unusual punishment when he is deprived of a mattress during the day and has the mattress returned to him at night. *See Anderson v. Warden of Berks Cty. Prison*, 602 F. App'x 892, 894 (3d Cir. 2015) (per curiam) (citing *Franklin v. Lockhart*, 883 F.2d 654, 654-55 (8th Cir. 1989); *Peterkin v. Jeffes* 855 F.2d 1021, 1026-27 (3d Cir. 1988)).   Other courts, including courts within the Third Circuit, have likewise concluded that an inmate cannot maintain an Eighth Amendment claim with respect to a daily mattress restriction. *See, e.g.*, *Alex v. Stalder*, 225 F. App'x 313, 313 (5th Cir. 2007) (taking of mattress during daytime did not violate Eighth Amendment); *Mestre v. Wagner*, No. 11-2480, 2012 WL 300724, at *4 (E.D. Pa. Jan. 31, 2012) (no Eighth Amendment violation when inmate plaintiff was provided a mattress for nine (9) hours each night); *Gannaway v. Berks Cty. Prison*, No. 09-4501, 2011 WL 1196905, at *6 (E.D. Pa. Mar. 31, 2011) (concluding that mattress restriction did not violate the Eighth Amendment because "[r]emoval of the mattress during daytime hours [did] not deprive [inmate plaintiff] of a basic need"); *cf. Andrews v. Vance*, No. 4:04 CV 551, 2005 WL 3307334, at *3 (M.D. Pa. Dec. 6, 2005) (granting summary judgment upon conclusion that total deprivation of mattress for two (2)

28

days to an inmate with pre-existing back issues did not violate the Eight Amendment).  Thus, McClure cannot establish an Eighth Amendment violation based upon the mattress restriction imposed and enforced by Defendants, given that he was provided a mattress at night and was not deprived of a basic need during the day.

Moreover, McClure has not demonstrated that Defendants knew or were aware of a risk to his health or safety by imposing the daytime mattress restriction. *See Wilson*, 501 U.S. at 298; *Farmer*, 511 U.S. at 837.  He maintains that the restriction exacerbated his pre-existing back problems from using the damaged mattress.  (Doc. No. 29 ¶ 24.)  McClure states that he began "to experience a substantial amount of pain in [his] lower back, along with tingling and numbness sensations in [his] legs, and sciatica." (*Id.*)  He also "experienced stiffness in [his] back, reduced mobility, and a loss of meaningful and restful sleep." (*Id.* ¶ 25.)  He received Motrin from medical on several occasions. (*Id.* ¶ 26.)  However, nothing in the record before the Court establishes that Defendants were aware of McClure's medical issues.  Thus, McClure has not met his burden of demonstrating that Defendants actually knew or were aware of any substantial risks to his health or safety by imposing the daytime mattress restriction and deliberately disregarded those risks. *See Beers-Capitol*, 256 F.3d at 125; *see also Farmer*, 511 U.S. at 837.

In sum, McClure was not denied a basic need by being subject to the daytime mattress restriction, and he has not shown that Defendants were aware of any risks to his health or safety. Thus, he cannot maintain an Eighth Amendment claim regarding the mattress restriction against Defendants. Accordingly, the Court will grant summary judgment to Defendants on this basis.

## V.     CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment (Doc. No. 88) will be granted because McClure has not demonstrated that the daytime mattress restriction violated his rights under the Eighth Amendment. An appropriate Order follows.


s/Sylvia H. Rambo
SYLVIA H. RAMBO
United States District Judge


Dated: May 1, 2019